UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

DON S. WILLNER & ASSOCIATES, P.C., )
a State of Washington Professional )
Corporation, )
 )
 )
      Plaintiff, )
 )
v. ) No.
 )
FEDERAL DEPOSIT INSURANCE )
CORPORATION, as Receiver for the )
Benj. Franklin Federal Savings and )
Loan Association, Portland, Oregon, )
 )
      Defendant. )

## COMPLAINT

Plaintiff Don S. Willner & Associates, P.C. ("Plaintiff" or "the Willner Firm" or the "Firm"), for its Complaint against the Federal Deposit Insurance Corporation ("FDIC"), in its capacity as Receiver for Benj. Franklin Federal Savings and Loan Association, Portland, Oregon ("Benj. Franklin"), hereby states as follows:

### Nature of the Case

1.  This is an action pursuant to 12 U.S.C. § 1821(d)(6) for *de novo* review of a claim by the Willner Firm, submitted to the FDIC pursuant to 12 U.S.C. § 1821(d)(5), for fees and expenses to compensate the Willner Firm for legal services rendered to Benj. Franklin and its shareholders in connection with a favorable and substantial federal income tax settlement and the preservation of a common fund.

## Parties

2.  Plaintiff, the Willner Firm, is a State of Washington Professional Corporation with offices in Portland, Oregon and Trout Lake, Washington.

3.  Defendant FDIC is an independent agency of the United States Government, which assumed the responsibility of Receiver for Benj. Franklin as of January 1, 1996, when, by statute, the FDIC succeeded to the rights and obligations of the Resolution Trust Corporation ("RTC") in connection with those institutions for which the RTC was then the receiver. The FDIC's principal place of business is in Washington, D.C.

## Jurisdiction and Venue

4.  This Court has jurisdiction over the subject matter of this action pursuant to 12 U.S.C. § 1821(d)(6). The Willner Firm submitted a proof of claim to the FDIC on or about August 21, 2005, which was supplemented on or about September 23, 2005, February 3, 2006, March 13, 2006, March 28, 2006, and May 8, 2006 (collectively the "Claim"); the FDIC deemed the Claim filed on November 21, 2005 and denied the Claim in part on May 19, 2006; and this action is filed within 60 days of that denial, as required by 12 U.S.C. § 1821(d)(6).

5.  The Willner Firm has complied with all procedural prerequisites to suit.

6.  This Court may properly exercise personal jurisdiction over the FDIC because the FDIC resides and maintains its primary place of business in the District of Columbia, and because the FDIC's denial of the Willner Firm's Claim took place in this district.

7. Venue is proper in this Court pursuant to 12 U.S.C. § 1821(d)(6).

**Factual Assertions**

8. In 1990, the United States Government placed Benj. Franklin in receivership, asserting that the institution was unable to satisfy its minimum regulatory capital requirements.

9. On September 14, 1990, a shareholder derivative class action was filed in the United States Court of Federal Claims on behalf of Benj. Franklin and its shareholders against the United States (the "Claims Court Action"), alleging that Benj. Franklin's capital had been reduced by breaches of contract and by takings of property without just compensation on the part of the United States.

10. Plaintiff or its principal, Don S. Willner ("Willner"), or its predecessor law firms, are and have been the only attorneys of record in the Claims Court Action.

11. In 1995 Willner obtained shareholder derivative status for the case and in 1998 Willner obtained summary judgment on liability. In 2002, Willner, with the assistance of other attorneys he had hired, prevailed after trial in the Claims Court Action, obtaining a judgment of approximately $35 million on behalf of Benj. Franklin and its shareholders. Motions for reconsideration of that decision remain pending in the Court of Federal Claims.

12. On April 22, 2002, the Internal Revenue Service ("IRS") filed a proof of claim with the FDIC asserting that Benj. Franklin owed approximately $1.2 billion in federal income tax for events which occurred after Benj. Franklin had been placed in RTC and later FDIC receivership. The IRS tax claim, if upheld,

would greatly exceed both the assets of the receivership estate and the judgment in the Claims Court Action. Consequently, if the alleged tax liability were paid, Benj. Franklin shareholders, who otherwise each would receive a portion of the receivership assets, would instead receive nothing.

13. On June 6, 2002, the FDIC notified Willner that the FDIC had concluded that the full assets of the receivership estate would have to be expended in paying the taxes claimed by the IRS. The FDIC informed Willner that it would not notify him before making tax payments from the assets of the receivership estate. *See* Letter from Bruce C. Taylor to Don S. Willner dated June 6, 2002, a true and correct copy of which is attached hereto as Exhibit 1 and incorporated herein as if set forth in full.

14. To prevent the FDIC from making tax payments that would deplete the assets of the receivership estate, Willner filed on behalf of the shareholders a suit against the FDIC in the United States District Court for the District of Oregon (the "Oregon Action").

15. Willner, who was and is the sole counsel of record in the Oregon Action, was successful in obtaining in that Action a temporary restraining order ("TRO") prohibiting the FDIC as Receiver from making any tax payment to the IRS. As a result, the FDIC undertook not to make any such payment without advance notice to Willner, and no taxes were paid until the settlement described in paragraphs 17-19 of this Complaint was negotiated and approved.

16. Had Willner not succeeded in obtaining the TRO, the FDIC would have made tax payments that would have depleted the assets of the receivership estate. The receivership estate would not have been able to

4

recover those assets, because the taxpayer (the FDIC) would not have sought a refund, and, even assuming that the shareholders would have had standing to seek a refund over the opposition of the government, no suit for a refund could be maintained unless the entire claimed tax liability first was paid, which could not have been done because there were not sufficient assets to do so.

17. On July 17, 2002, the IRS sued the FDIC in this Court seeking approximately $1.2 billion in taxes from the Benj. Franklin receivership. *See United States v. FDIC*, No. 1:02CV01427. The shareholders, again with Willner as sole counsel of record, moved to intervene in that action. The motion was stayed, but it prompted a three-year process of negotiations with the United States Department of Justice, the IRS and the FDIC, and ultimately produced a settlement of the tax issue.

18. In the negotiations, the FDIC did not advocate the lowest possible tax. Consequently, the efforts of shareholder counsel were crucial in achieving a resolution that would produce the lowest possible tax payment from the assets of the receivership estate.

19. The negotiations resulted in a settlement in which the IRS agreed to a tax payment of only $50 million, as compared to the approximately $1.2 billion it had claimed. As a result, the receivership estate retained a surplus of $44 million. This $44 million surplus will be increased by the amount that is recovered in the Claims Court Action filed by the derivative plaintiffs represented by Willner on behalf of the Benj. Franklin Receivership, which also would have been wiped out had the settlement not been achieved. After the remaining administrative expenses and claims are paid by the FDIC as

5

Receiver, tens of millions of dollars will be available for distribution to the shareholders of Benj. Franklin.

20. Willner's efforts were essential to preserving the surplus. Had Willner not obtained a TRO in the Oregon Action, the FDIC would have made tax payments out of the assets of the receivership estate, which would have depleted the surplus. In addition, Willner played a crucial role in the process that culminated in the tax settlement, serving as lead counsel and principal spokesperson, and coordinating the efforts of all counsel who were involved in that effort on behalf of the shareholders.

21. Don Willner personally has devoted approximately 8,000 hours to representing Benj. Franklin shareholders, of which, as of the date of the Claim, 1031.1 hours had been devoted to the tax claim. This suit deals only with the work relating to the tax settlement and no compensation is sought here for unrelated work in the Claims Court Action.

22. The Willner Firm charged the shareholders minimal fees for its work in resolving the tax issue, receiving only $101,793.90 for the work on that issue, at rates that have never exceeded $125 per hour for Willner's work. The Willner Firm's shareholder clients understood and agreed that these minimal fees would merely enable the Firm to stay in operation, and that the Firm would receive additional fees out of any assets of the receivership estate that were created or preserved through the Firm's legal work.

23. By agreeing to represent the shareholders on this basis, the Willner Firm assumed substantial risk. There was a significant possibility that the IRS would succeed in imposing a tax liability that would eliminate the

receivership surplus and the Claims Court judgment, in which case the Willner Firm would not receive any fees beyond the minimal fees paid by the shareholders as described in paragraph 22 of this Complaint.

24. In its Claim to the FDIC, the Willner Firm requested attorneys' fees in the amount of $541,327.50, plus a reasonable enhancement (multiplier), minus the $101,793.90 previously paid by the shareholders.

25. The Willner Firm's Claim also requested payment for the work of consultants, including a total of $2,700 for consultants who assisted in the preparation of the Claim; and the Claim requested reimbursement of certain other expenses, including $1,204.14 in travel costs incurred in bringing two former officers of Benj. Franklin to the fairness hearing in Washington, D.C. at which the tax settlement was approved.

26. By letter dated May 19, 2006, the FDIC approved the Willner Firm's Claim in part and disallowed the Claim in part. *See* Exhibit 2, attached hereto and incorporated herein as if set forth in full.

27. In its letter, the FDIC stated that it would "allow [the Willner] firm to be reimbursed for 842.35 hours at a $250 per hour billing rate." *See* Exhibit 2.

28. The amount of fees the FDIC thus approved – $210,587.50 (from which the $101,793.90 previously paid by the shareholders was to be subtracted) – amounts to less than 0.5% of the $44 million surplus in the receivership estate that would have been depleted but for the Willner Firm's efforts. Furthermore, to the extent that the receivership estate receives funds as a result of the judgment in the Claims Court Action, the surplus will be that

much greater than $44 million, all of which would have been wiped out but for the Willner Firm's efforts; and the fees the FDIC approved for the Firm will represent an even smaller fraction of the assets thus preserved.

29. Don Willner has practiced law for 55 years, and has been a member of the bar of this Court throughout that period. He also is admitted to practice in the States of Oregon and Washington. His practice has emphasized trial and appeals, including successful arguments in the United States Supreme Court, the Supreme Courts of Oregon and Washington, and numerous other federal and state courts, including this Court. Willner has been lead counsel in numerous complex cases, including, in addition to the Benj. Franklin matters, major litigation in the areas of civil rights, labor, and tenants' rights. In addition to his practice, for more than ten years Willner was an adjunct professor of law at Lewis and Clark Law School in Portland, Oregon, and he has served as a Circuit Court Judge pro tem in five Oregon counties by appointment of the Chief Justice of the Oregon Supreme Court. Laird C. Kirkpatrick, former Dean of the University of Oregon Law School and currently a visiting professor at the George Washington University Law School, has stated that Willner is "one of the most highly regarded trial attorneys in the state [of Oregon], particularly for complex litigation," and that "[Willner's] ability and skill match that of lawyers handling similar legal matters in Washington, D.C. or any other large urban area."

30. The $250 per hour rate used by the FDIC to determine the Willner Firm's fees constitutes less than half of the prevailing hourly rate in the District of Columbia for attorneys with qualifications comparable to Don Willner's, and

less than half of the hourly rate used by the FDIC in determining the fees to be paid to other attorneys representing Benj. Franklin shareholders whose qualifications do not exceed Willner's and whose contributions to preserving the assets of the receivership estate were, if anything, less substantial than his.

31.   The $250 per hour rate used by the FDIC to determine Willner's fee constitutes slightly more than half of the prevailing rate in Portland, Oregon for attorneys with qualifications comparable to Willner's.

32.   The 842.35 hours counted by the FDIC in determining the Willner Firm's fees were 188.75 fewer hours than the Firm in fact devoted to the tax issues. The FDIC did not even identify most of the 188.75 hours it excluded from the Claim, or state why these hours had been excluded. To the extent that the FDIC gave any reasons for excluding any of the 188.75 hours, those reasons fail to indicate that any of the hours were not reasonably expended by the Willner Firm in its successful efforts to preserve the assets of the receivership estate. All of the 188.75 hours disallowed by the FDIC were reasonably expended by the Firm in those efforts.

33.   The FDIC also disallowed the $2,700 requested for consultants' assistance in preparing the Claim. The FDIC stated that that request was "disallowed because their time was spent working on [the] attorney's fee application and as such these expenses do not constitute reasonable attorney's fees." *See* Exhibit 2.

34.   Without giving any explanation, the FDIC disallowed the $1,204.14 in travel expenses described in paragraph 25 of this Complaint which were incurred in bringing two former Benj. Franklin officers to the fairness hearing.

9

*See* Exhibit 2. Those expenses were reasonably and necessarily incurred, because the attendance of the former officers was necessary due to the fact that they had knowledge concerning factual matters that were likely to arise in the hearing.

## FIRST CLAIM FOR RELIEF

### Determination of Claim for Reasonable Attorneys' Fees and Expenses Under 12 U.S.C. § 1821(d)(6)

35. Plaintiff incorporates by reference the allegations contained in paragraphs 1-34 of this Complaint as if fully restated herein.

36. The Willner Firm has complied with all procedural prerequisites to presenting to this Court its claim for fees and expenses from the receivership estate, including obtaining a determination from the FDIC in the first instance.

37. The efforts of the Willner Firm, both in obtaining the TRO in the Oregon Action and in its work as lead counsel in achieving the settlement of the IRS tax claim, were crucial in enabling the receivership estate to preserve a $44 million surplus that otherwise would have been paid in taxes, as well as a substantial judgment in the Claims Court Action that otherwise would have been wiped out by tax payments.

38. The Willner Firm thus performed the major role in preserving a common fund consisting of the $44 million surplus plus the funds to be received as a result of the judgment in the Claims Court Action, from which the Firm is entitled to receive a reasonable percentage of the fund as payment of attorney's fees, as well as reimbursement of its reasonable expenses.

39. For its work on the tax issue, the Willner Firm seeks a total fee of $880,000. That amount represents 2% of the $44 million receivership surplus which would have been depleted but for the Willner Firm's efforts, without even taking into account the funds to be received as a result of the Claims Court judgment, which also would have been depleted but for the Willner Firm's efforts in resolving the tax claim.

40. Considering all relevant factors, including but not limited to the success achieved by the Willner Firm, the complexity of the issues involved, Don Willner's skill and experience, the quality of the work performed, and the risks assumed by the Firm, the requested fee of $880,000 not only is reasonable, but is significantly less than the amount that could reasonably be awarded.

41. The prevailing hourly rate for attorneys of Don Willner's caliber and qualifications is at least $525. Willner devoted 1031.1 hours to this matter, all of which time was reasonably expended. Hence, the requested fee of $880,000 represents an enhancement of only approximately 63% beyond the amount that would be computed by applying reasonable hourly rates to the hours reasonably expended without giving any consideration to the results achieved, the quality of the work, or the risks assumed. Consideration of those factors justifies an enhancement well in excess of 63%.

42. Even if the FDIC were correct in stating that a reasonable hourly rate for Don Willner is $250 – which is not the case – and even if the FDIC were correct that 188.75 of the hours spent on this matter by the Willner Firm were not reasonably expended – which again is not the case – the fees as thus

determined by the FDIC would result in a fee award of at least $880,000 if the amount determined by the FDIC were enhanced as is appropriate in light of the results achieved by the Willner Firm, the quality of the work, and the risks assumed.

43. Together with any reasonable fees that have been or may be awarded to other attorneys who represented shareholders in this matter, the requested fee payment of $880,000 to the Willner Firm will result in a total fee for all shareholder attorneys that constitutes only a small percentage of the fund that was created and/or preserved by the attorneys' efforts.

44. Accordingly, the Willner Firm should receive a fee payment of at least $880,000, minus the $101,793.90 already received.

45. The $2,700 requested for consultants' services in preparing the Claim also is reasonable, and should be paid by the receivership estate.

46. The $1,204.14 in expenses incurred in bringing two former Benj. Franklin officers to the fairness hearing were reasonably incurred in resolving the tax claim, as their presence at the hearing was necessary, and those expenses should be paid by the receivership estate.

## SECOND CLAIM FOR RELIEF

### Quantum Merit

47. Plaintiff incorporates by reference the allegations contained in paragraphs 1-46 of this Complaint as if fully restated herein.

48. The Willner Firm rendered valuable services to the Benj. Franklin receivership and the Benj. Franklin shareholders, and to the FDIC, without

which the $44 million receivership surplus and the Claims Court judgment would have been depleted by tax payments.

49.  The Benj. Franklin receivership and the Benj. Franklin shareholders accepted, used and enjoyed the Willner Firm's services to effectuate a favorable resolution of the IRS tax claim.

50.  The Benj. Franklin receivership and the Benj. Franklin shareholders were provided reasonable notice, both actual and constructive, that the Willner Firm expected to be paid for its services from the assets of the receivership estate in an amount beyond what was charged to and paid by the Firm's shareholder clients.

51.  Absent the fee payments and expense reimbursements requested in this action, the Benj. Franklin receivership and shareholders will be unjustly enriched at the expense of the Willner Firm.

WHEREFORE, the Court should (i) enter judgment in Plaintiff's favor in the amount of $782,110.24, (ii) award Plaintiff its reasonable attorney's fees in this action, and (iii) award such further relief as the Court deems just and proper.

Respectfully submitted,

*/s/ Jeremiah A. Collins*
_____

Of Counsel:
KELBY D. FLETCHER
Peterson Young Putra Fletcher
  Knopp & Wampold, P.S.
2800 Century Square
1501 Fourth Avenue
Seattle, WA 98101-1609
Tel:   206-624-6800
Fax:  206-682-1415

JEREMIAH A. COLLINS
No. 241935
Bredhoff & Kaiser, P.L.L.C.
805 15th Street, N.W., Suite 1000
Washington, DC 20005
Tel:   202-842-2600
Fax:  202-842-1888

Dated: July 7, 2006