UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP, )<br>)<br>and )<br>)<br>WILLNER & ASSOCIATES, )<br>)<br>and )<br>)<br>BLACKWELL SANDERS PEPER MARTIN )<br>and )<br>ERNEST M. FLEISCHER, )<br>)<br>   Consolidated Plaintiffs, )<br>)<br>v. )<br>)<br>)<br>FEDERAL DEPOSIT INSURANCE )<br>CORPORATION, AS RECEIVER FOR )<br>THE BENJ. FRANKLIN FS&LA, )<br>)<br>   Defendant. )<br>) | Civil Case No. 06-1120 (EGS)<br><br>[Consolidated with No. 06-1227<br>(EGS) and No. 06-1273 (EGS)] |

**PLAINTIFF WINSTON & STRAWN'S STATEMENT OF
UNCONTESTED MATERIAL FACTS AND EXHIBITS
IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Civil Rules 7 and 56.1, Plaintiff Winston & Strawn LLP ("Winston & Strawn") submits its Statement of Uncontested Material Facts in Support of its Motion for Summary Judgment.[1]

---

[1] Citation abbreviations referred to in this Statement of Undisputed Material Facts are listed at the end of this document.

I. **The Parties**

1. Winston & Strawn is an international law firm and Illinois limited liability partnership, with its principal place of business at 35 West Wacker Drive, Chicago, IL 60601. Compl. & Ans. ¶ 2 (Exs. 1, 9); Buchanan Decl. ¶ 2 (Ex. 10).

2. The Federal Deposit Insurance Company ("FDIC-Receiver") is being sued in its capacity as receiver for the seized Benj. Franklin Federal Savings & Loan Association ("Benj. Franklin"). Compl. & Ans. ¶ 3 (Exs. 1, 9).

II. **Winston & Strawn Has Represented Benj. Franklin's Shareholders Since 1990 In Connection With The Benj. Franklin Seizure**

3. Federal regulators seized Benj. Franklin in February 1990. Compl. & Ans. ¶ 13 (Exs. 1, 9).

4. Unlike with most bank seizures, the Benj. Franklin receivership had a surplus of tens of millions of dollars. Gill Dep. 60:8-18 (Ex. 3); Settlement Fairness Hearing 12:8-12 (Ex. 5).

5. On September 14, 1990, Winston & Strawn, together with Portland, Oregon counsel, Don Willner, filed a shareholder derivative and class action on behalf of C. Robert Suess and other shareholders of Benj. Franklin in the United States Court of Federal Claims. The complaint alleged that the seizure of Benj. Franklin constituted, among other things, a breach of contract by the United States ("CFC Case"). Compl. & Ans. ¶ 14 (Exs. 1, 9); Buchanan Decl. ¶ 3 (Ex. 10).

6. In April 1999, FDIC-Receiver was joined in the CFC Case as an involuntary plaintiff. Buchanan Decl. ¶ 5 (Ex. 10).

7. On December 22, 1997, then-Chief Judge Smith of the United States Court of Federal Claims granted Benj. Franklin's motion for summary judgment, finding the United

States liable to Benj. Franklin for breach of contract. Ex. 11 (CFC Liability Decision); Compl. & Ans. ¶ 16 (Exs. 1, 9).

8. In late 2006, Benj. Franklin received a judgment for about $52 million in damages. Ex. 2 (CFC Reconsideration Decision). The United States may appeal this judgment.

### III. During The CFC Case, Winston & Strawn Learned That The IRS Asserted A Claim Against The Benj. Franklin Receivership For More Than $1 Billion

9. In 1998, during the course of discovery on damages issues in the CFC Case, Winston & Strawn learned that the Internal Revenue Service ("IRS") had asserted a claim against the Benj. Franklin receivership for about $1.2 billion in alleged taxes and penalties. Buchanan Decl. ¶ 4 (Ex. 10).

10. This billion-dollar IRS claim well-exceeded the Benj. Franklin receivership surplus as well as all damages sought by Benj. Franklin in the CFC Case. Settlement Fairness Hearing at 12:13-16 (Ex.5); Gill Dep. at 64:14-22 (Ex. 3).

11. On July 17, 2002, the United States filed suit against FDIC-Receiver in this Court based on the IRS claim and, in that suit, sought more than $1 billion in damages ("Tax Case"). Ex. 12 (IRS complaint).

12. The IRS claim and resulting Tax Case involved novel and complex tax issues. Compl. & Ans. ¶ 24 (Exs. 1, 9); Gill Dep. at 59:5-7 (Ex. 3); Settlement Fairness Hearing Tr. at 52:9-13 (Ex. 5).

### IV. Winston & Strawn Provided Legal Services To The Benj. Franklin Shareholders In Connection With The IRS Claim And The Tax Case At A Reduced Hourly Rate In Return For A Possible Success Fee

13. Although the IRS claim technically was against FDIC-Receiver, the Benj. Franklin shareholders were the real parties in interest since the institution is defunct and any receivership surplus will be distributed to its shareholders. Buchanan Decl. ¶ 6 (Ex. 10).

14. Faced with the prospect of losing their entire investment in the institution, the Benj. Franklin shareholders directed Winston & Strawn to analyze the legitimacy of the IRS claim shortly after that claim was discovered. Buchanan Decl. ¶ 7 (Ex. 10); Gill Dep. at 67:3-8 (Ex. 3).

15. At the shareholders' request, Winston & Strawn provided the requested tax-related legal services under the pre-existing fee agreements related to the CFC Case. Under those agreements, Winston & Strawn charged a reduced lawyer hourly rate of $125 per hour in return for a possible success fee. Buchanan Decl. ¶ 8 (Ex. 10).

16. Winston & Strawn entered into an engagement letter with Mr. Suess dated May 9, 2003, that confirmed the parties' fee arrangement regarding the Tax Case. Buchanan Decl. ¶ 10, (Ex. 10). The letter confirmed that Winston & Strawn had discounted its "hourly rates by two-thirds ($125.00 an hour)" in return for Mr. Suess's agreement, on behalf of Benj. Franklin shareholders, to agree to request on behalf of the firm, if appropriate, a "success fee . . . in the form of a multiple of [Winston & Strawn's] normal hourly rates[.]" *Id.*

17. Winston & Strawn initially estimated that the Tax Case would require fewer than 600 hours of attorney time. As time went on, however, it became apparent that the pertinent tax issues were much more complicated, and thus required an expenditure of more attorney time, than expected. Buchanan Decl. ¶ 11 (Ex. 10).

18. In the course of analyzing the IRS's tax claim and developing a defense against the Tax Case, Winston & Strawn conducted multiple depositions, researched and prepared numerous memoranda analyzing complex and novel tax issues, and subpoenaed and reviewed thousands of pages of tax returns and other tax related documents. Winston & Strawn also prepared various complex tax schedules, reviewed the IRS's analyses and schedules and took the

4

lead in negotiating the two cases with the FDIC and the IRS. Buchanan Decl. ¶ 12, (Ex. 10); Gill Dep. at 70:15-75:4 (Ex. 3).

19.  The FDIC-Receiver attorney who was primarily responsible for evaluating Winston & Strawn's fee petition at issue in this case testified as follows regarding Winston & Strawn's leadership role in settling the Tax Case:

> Q.  In your opinion, of the law firms that worked on the tax settlement, who in your opinion or what firm in your opinion did the most heavy lifting?
>
> A.  I think with respect to the tax matters – I think Winston & Strawn.
>
> * * *
>
> Q.  [D]o you have knowledge of which firm, in your opinion, reviewed the majority of the tax returns?
>
> A.  Judging by the billing, it was clear that the Winston & Strawn firm reviewed the most tax firms [sic].
>
> * * *
>
> Q.  Which law firm did -- the most work associated with the presentations that were given?
>
> A.  As far as the substantive responses, I would say Winston & Strawn.
>
> * * *
>
> Q.  In your opinion, if you would single out one single attorney who did the most to bring about a successful settlement of the IRS claim, who would that be?
>
> A.  I mean, I – certainly, I mean, if – you know, issue by issue I think Mitch Moetell [sic] did [from Winston & Strawn].

Gill Dep. at 70:18-71:1, 72:6-11, 73:6-10, 74:18-75 (Ex. 3).

20.  With Mr. Suess's knowledge and consent, Winston & Strawn ultimately devoted more than 1,400 hours to the IRS claim and the Tax Case at the reduced rate of $125 an hour

5

based on the mutual understanding that the firm would be entitled to a success fee of twice its normal hourly rates for all time devoted to the IRS claim and the resulting Tax Case if that matter were settled in a manner acceptable to a sufficient number of shareholders to approve the settlement. Buchanan Decl. ¶ 13 (Ex. 10); Suess Decl. at 2 (Ex. 6).

**V.    Winston & Strawn, Along With Co-Counsel, Settled The Tax Case On Terms Favorable To The Benj. Franklin Shareholders**

21.    Winston & Strawn – along with FDIC-Receiver, Willner & Associates, Blackwell Sanders Peper Martin (including Ernest Fleischer) and Spriggs and Hollingsworth – attempted to negotiate a resolution of the Tax Case. Compl. & Ans. ¶¶ 1, 17, 32, 38, 44 (Exs. 1, 9); Gill Dep. at 70:15-74:13 (Ex. 3).

22.    After nearly two years of settlement negotiations with the IRS, the matter was settled for $50 million, or only 4.2% of the original $1.2 billion IRS claim. Settlement Order (Ex. 13); Compl. & Ans. ¶ 1, 36 (Exs. 1, 9). This settlement allowed Benj. Franklin shareholders to keep $42 million of the approximately $92 million surplus in the Benj. Franklin receivership, and potentially to receive tens of millions of additional dollars as a result of the CFC Case. Compl. & Ans. ¶¶ 36, 44 (Exs. 1, 9).

23.    On May 2, 2006, this Court held a fairness hearing concerning the Tax Case settlement and approved it. Settlement Fairness Hearing at 1, 48:21-25 (Ex. 5); Settlement Order (Ex. 13).

24.    At the May 2, 2006, settlement fairness hearing, this Court stated, in part:

> I applaud your efforts, I mean when I say you, I applaud the efforts of everyone who participated in this, but it just struck me as quite unusual that this was accomplished without the assistance of a mediator or a retired judge or an arbitrator. The parties literally rolled their sleeves up and made this thing happen. It took a lot of time.

\* \* \*

> I applaud your efforts. It is quite unusual that a settlement of this magnitude is achievable without the intervention or the assistance of someone who is completely detached from the proceedings. I really applaud the efforts of everyone who worked so hard over the years. I recognize this case was on a docket for quite a while, but the parties were quiet. You weren't bothering me so I didn't bother you. I kept track of it every six months. I had to report open which is fine. The parties were negotiating. Periodic progress reports. I've learned that when the parties are actively working and trying to resolve their differences, let them work. If they need me, they'll ask me.
>
> * * *
>
> And let me just say and I'll depart from the order. Let me say that there's no such thing as a perfect settlement I've not seen a perfect settlement in the 22 years I've been a judge in the more than 30 years I've been an attorney and it just strikes me as eminently reasonable that this settlement has been reached as a result of significant arms-length negotiations and, as counsel readily admit and concede, a give and take process.
>
> * * *
>
> Indeed, it's a very historic agreement for many reasons. Many of the reasons have been alluded to by counsel for the parties. But it is also an important settlement because it came about as a result of the hard work and efforts of the attorneys and shareholders without the participation by disinterested third parties, and we don't see that too often especially in cases that are either class actions or analogous to class actions. Normally it takes the experience and hard work of a disinterested third party to achieve finality. The parties were able to achieve finality themselves. It took a lot of time. It took a lot of effort, but it does show that the process can work. So the parties have something to be thankful. The shareholders have something to be thankful for.
>
> * * *
>
> I had no reason to doubt that and it's truly amazing though that you were able to accomplish this without the intervention of the third party because that's really atypical these days. The cases are so complex. It's very difficult to get the parties to sit down at the table without a third party knocking heads and bring people together, but, you know, you have something to be proud of. Everyone worked very hard.

Settlement Fairness Hearing Tr. at 20:7-13, 20:20-21:7, 49:12-19, 50:19-51:7, 56:25-57:7

(Ex. 5).

VI. **Winston & Strawn Petitioned FDIC-Receiver For An Attorney's Fee Award That Included The Success Fee Anticipated By Benj. Franklin Shareholders**

25.     Winston & Strawn filed a Proof of Claim with FDIC-Receiver for a reasonable attorney's fee relating to the IRS claim and resulting Tax Case. Compl. & Ans. ¶ 26 (Exs. 1, 9); Proof of Claim, excluding enclosures (Ex. 14).

26.     In its Proof of Claim, Winston & Strawn requested $934,201 for 1,457 hours of work. This fee request reflected twice the value of the firm's legal services using its standard billing rates ($1,116,082) minus attorney's fees previously collected from the Benj. Franklin shareholders ($181,791). Proof of Claim at 8 (Ex. 14).

27.     On November 29, 2005, Winston & Strawn supplemented its Proof of Claim with Amendment No. 1, which accounts for $11,867.50 of legal services performed on this matter from August through October 2005. Proof of Claim Amendment No. 1, excluding enclosures (Ex. 15).

28.     On March 30, 2006, Winston & Strawn supplemented its Proof of Claim with Amendment No. 2, which accounts for $7,693.75 of legal services performed on this matter from November 2005 through February 2006. Proof of Claim Amendment No. 2, excluding enclosures (Ex. 16).

29.     On May 12, 2006, Winston & Strawn supplemented its Proof of Claim with Amendment No. 3, which accounts for $11,640 of legal services performed on this matter in March and April of 2006. Proof of Claim Amendment No. 3, excluding enclosures (Ex. 17).

VII. **FDIC-Receiver Approved Winston & Strawn's Fee Petition To The Extent It Requested Fees At The Firm's Standard Hourly Billing Rates But Rejected The Requested Success Fee As Unreasonable**

30.     On May 17, 2006, FDIC-Receiver sent Winston & Strawn a Notice of Partial Disallowance of Claim For Reasonable Attorney's Fees. FDIC Letter (Ex. 4).

31. FDIC-Receiver allowed the claim for recovery of attorney's fees in the amount of $400,812.75, which equaled Winston & Strawn's standard hourly billing rate minus any reimbursements from the Benj. Franklin shareholders. *Id.* In doing so, FDIC-Receiver admitted that "W&S rendered valuable services to Benj. Franklin's shareholders and the Benj. Franklin receivership." Ans. ¶ 44 (Ex. 1); Gill Dep. at 68:13-21; 70:15-71:15, 87:17-21 (Ex. 3).

32. FDIC-Receiver disallowed only 15.5 hours of Winston & Strawn's 1,457 hours of attorney time devoted to the IRS Claim and the Tax Case. These 15.5 hours corresponded to $6,638.75 of fees. FDIC Letter (Ex. 4)[2]; Gill Dep. at 68:13-69:8 (Ex. 3).

33. FDIC-Receiver denied the requested two-times enhancement of Winston & Strawn's standard billing rates on the ground that an "enhancement that would result in double [Winston & Strawn's] standard billing rates is not appropriate in this case because this would not constitute reasonable attorney's fees." FDIC Letter (Ex. 4); *see also* Gill Dep. at 69:9-70:2, 78:10-17, 83:17-84:3, 85:1-5 (Ex. 3).

34. The fee award requested by Winston & Strawn of about 2.8% ($1,165,208) of the $42 million common fund preserved for the benefit of all Benj. Franklin shareholders "is substantially lower than percentage-based contingency awards routinely sustained as reasonable by courts in this jurisdiction." Ans. ¶ 36 (Ex. 1); Summary of Fee Petition Chart (Ex. 18).

35. To date, FDIC-Receiver has paid Winston & Strawn $400,812.75 in legal fees pertaining to the IRS claim and resulting Tax Case. Ans. ¶ 25 (Ex. 1); FDIC Letter (Ex. 4); Summary of Fee Petition Chart (Ex. 18).

---

[2] Winston & Strawn has not challenged the disallowance of these 15.5 hours.

36. FDIC-Receiver did not pay Winston & Strawn any interest on fees FDIC-Receiver awarded to the firm after the Tax Case settlement even though the fee award pertained to attorney time expended years earlier. Gill Dep. at 114:1-14 (Ex. 3).

37. A Summary of Fee Petition Chart summarizing the fees requested by Winston & Strawn, including amounts already paid to the firm, is attached hereto as Exhibit 18.

**VIII. A Majority Of The Benj. Franklin Shareholders Support Winston & Strawn's Fee Petition**

38. More than half of the Benj. Franklin shareholders support Winston & Strawn's request for an additional $574,938 in fees pertaining to the IRS claim and resulting Tax Case. Suess Dec. at 3 (Ex. 6); Siemens Dec. at 2 (Ex. 8); Hindes Dec. at 1 (Ex. 7); *see also* Compl. & Ans. ¶ 47(iv) (admitting "declarations of support from individuals holding over one-third of the outstanding shares of Benj. Franklin stock").

Dated: February 2, 2007

Respectfully submitted,

By: /s/ Thomas M. Buchanan
Thomas M. Buchanan
Charles B. Klein
Scott D. Pluta
WINSTON & STRAWN LLP
1700 K Street, N.W.
Washington, D.C. 20001
(202) 282-5100

*Counsel for Winston & Strawn LLP*

## **ABBREVIATIONS**

1. "Ans." refers to Defendant's August 18, 2006 Answer and Affirmative Defenses (Ex. 1).

2. "Buchanan Dec." refers to the Declaration of Thomas M. Buchanan (Ex.10).

3. "CFC Liability Decision" refers to the Court of Federal Claims judicial opinion on summary judgment establishing liability in favor of the Benj. Franklin Shareholders, 39 Fed.Cl. 753 (1997) (pertinent portions attached as Ex. 11).

4. "CFC Reconsideration Decision" refers to the Court of Federal Claims judicial opinion regarding competing Motions for Reconsideration of the $32 million damages award in favor of the Benj. Franklin shareholders, in which the award was increased to $52 million, 2006 WL 3703119 (pertinent portions attached as Ex. 2).

5. "Compl." refers to Plaintiff's June 20, 2006 Complaint (Ex. 9).

6. "FDIC Letter" refers to the May 17, 2006 letter from Defendant to Winston & Strawn re "Notice of Partial Disallowance of Claim for Reasonable Attorney's Fees" (Ex. 4).

7. "Gill Dep." refers to the deposition testimony of Richard Gill (pertinent portions attached as Ex. 3).

8. "Hindes Dec." refers to the Declaration of Gary E. Hindes (Ex. 7).

9. "IRS Compl." refers to the Complaint filed by the I.R.S. in United States v. FDIC, No. 1:02cv01427 (EGS), on July 17, 2002 (pertinent portions attached as Ex. 12)

10. "Proof of Claim" refers to the November 18, 2005 Proof of Claim filed with Defendant by Winston & Strawn and Spriggs & Hollingsworth (Ex. 14).

11. "Proof of Claim Amendment No. 1" refers to a cover letter with attached attorney fees invoices supplementing the Proof of Claim for the period August through October 2005 (Ex. 15).

12. "Proof of Claim Amendment No. 2" refers to a cover letter with attached attorney fees invoices supplementing the Proof of Claim for the period November 2005 through February 2006 (Ex. 16).

13. "Proof of Claim Amendment No. 3" refers to a cover letter with attached attorney fees invoices supplementing the Proof of Claim for the period March and April 2006 (Ex. 17).

14. "Settlement Fairness Hearing Tr." refers to the May 2, 2006, transcript of Fairness Hearing before Judge Emmitt G. Sullivan (pertinent portions attached as Ex. 5).

15. "Settlement Order" refers to the Order entered by this Court on May 2, 2006, approving the terms of the settlement reached in United States v. FDIC, No. 1:02cv01427

(pertinent portions attached as Ex. 12).

16. "Siemens Dec." refers to the Declaration of Abe Siemens (Ex. 8).

17. "Suess Dec." refers to the Declaration of C. Robert Suess (Ex. 6).

18. "Suess Fee Agreement" refers to the May 9, 2003, engagement letter between Winston & Strawn and C. Bob Suess (Ex. 19).

19. "Summary of Fee Petition Chart" refers to chart that summarizes Winston & Strawn's attorney fee request (Ex. 18).

DC:488635.5

# CERTIFICATE OF SERVICE

I hereby certify that on February 2, 2007, a copy of the foregoing document was served by first class mail, postage prepaid, and email upon the following:

William F. Demarest (D.C. Bar No. 266312)
Blackwell Sanders Peper Martin LLP
750 17th Street N.W., Suite 1000
Washington, D.C. 20006-3901
Phone: (202) 378-2300
Facsimile: (202) 378-2319
*Attorney for Blackwell Sanders Peper
Martin, LLP and Ernest Fleischer*

James Borthwick  (MO #19722)
Nancy S. Jochens  (MO #49022)
Blackwell Sanders Peper Martin LLP
4801 Main Street, Suite 1000
Kansas City, MO. 64112
Phone: (816) 983-8000
Facsimile: (816) 983-8080
*Attorneys for Blackwell Sanders Peper
Martin, LLP and Ernest Fleischer*

Don S. Willner
DON S. WILLNER AND ASSOCIATES
630 Sunnyside Road
Trout Lake, Washington 98650
(509) 395-2939 (Facsimile)

Bruce C. Taylor
FEDERAL DEPOSIT INSURANCE CORPORATION
55017th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2478 (Facsimile)
Counsel for Federal Deposit Insurance Corporations,
as Receiver far The Benj. Franklin FS&LA

Kelby Fletcher
Attorney at Law
1501 4th Avenue, Suite 2800
Seattle, WA 98101
(206) 682-1415 (Facsimile)

Jeremiah A. Collins
13REDHOFF &. KAISER, PLLC
805 15th Street, NW
Washington, D.C. 20005-2207
(202) 842-1885 (Facsimile)
Counsel for Willner & Associates

Thomas M. Buchanan