**Federal Deposit Insurance Corporation as Receiver for:**
**Benj. Franklin Federal Savings & Loan Association**
**Portland, Oregon**

_(Name of Bank/Financial Institution and Location)_

## PROOF OF CLAIM

SSN/Tax ID # (1) __See below__

The undersigned, (2) __Counsel for Benj. Franklin Shareholders__
_(Name of person making the claim)_

say that the __Benj. Franklin Fed. Sav. & Loan Ass'n__ now in liquidation is
_(Name of Bank/Financial Institution)_

justly indebted to (3) __The Shareholders' Counsel identified below__ in the sum of

(4) __$1,142,980 (through July 31, 2005)__, based on the following Claim:

**SEE ADDITIONAL PAGES FOR LISTING AND EXPLANATION OF THIS CLAIM.**

The undersigned further states that they make this claim on behalf of

(7) __The Counsel for Benj. Franklin Shareholders identified below__

and that no part of said debt has been paid, that

(8) __The Benj. Franklin Shareholders and their Counsel__
_(Individual/Joint/Corporation/Partnership/Firm/Agency)_

have given no endorsement or assignment of this claim or any part thereof, and that there is no set-off or counterclaims, or other legal or equitable defense to said claim or any part thereof.

(9) THE NAMES OF THE TWO CLAIMANTS FOLLOW:

NAME: _Rosemary Stewart_
_(Signature of Person Making Claim)_

TYPED NAME: __Rosemary Stewart__

FIRM: __Spriggs & Hollingsworth__

ADDRESS: __1350 I Street, N.W.__

CITY/STATE/ZIP: __Washington, DC 20005__

TELEPHONE NUMBER: __(202) 898-5888__

FIRM TAX I.D. NO. __52-1279928__

NAME: _*Thomas M. Buchanan by R.S.*_
(Signature of Person Making Claim)

TYPED NAME: **Thomas M. Buchanan**

FIRM: **Winston & Strawn, LLP**

ADDRESS: **1700 K Street, N.W.**

CITY/STATE/ZIP: **Washington, DC 20006**

TELEPHONE NUMBER: **(202) 282-5787**

FIRM TAX I.D. NO. **36-1975990**

The penalty for knowingly making or inviting reliance on any false, forged, or counterfeit statement, document, or thing for the purpose of influencing in any way the action of the Federal Deposit Insurance Corporation is a fine of not more than $1,000,000 or imprisonment for not more than thirty years, or both (18 U.S.C. Section 1007).

**Federal Deposit Insurance Corporation as Receiver for:**
**Benj. Franklin Federal Savings & Loan Association**
**Portland, Oregon**

## PROOF OF CLAIM EXPLANATION

### Overview

This claim is being filed by two of the law firms that have represented shareholders of Benj. Franklin Federal Savings & Loan Association, Portland, Oregon (hereafter "Benj. Franklin") in connection with the tax claim made against the Benj. Franklin receivership by the U.S. Internal Revenue Service for $1.2 billion of alleged taxes and penalties. The claimants are Spriggs & Hollingsworth and Winston & Strawn (hereafter "the Attorney Claimants").

After nearly two years of tough negotiations on a novel tax matter, the IRS has agreed to accept a $50 million payment of taxes and interest on its $1.2 billion claim against the FDIC as receiver for Benj. Franklin (hereafter the "FDIC-Receiver"). This will leave a surplus in the Benj. Franklin receivership of approximately $42 million. After additional expenses and claims are paid by the FDIC-Receiver, the remaining surplus will be available for distribution to the approximately 6,500 shareholders of Benj. Franklin. The tax settlement is therefore a very favorable result for the Benj. Franklin receivership and for all of the Benj. Franklin shareholders, and it was made possible in large part by the work of the Attorney Claimants here, who took an active role in tax-related litigation and in the settlement discussions, negotiations, and paperwork relevant to resolving the tax issues

As noted above, the counsel filing this consolidated claim for legal fees are: (1) Spriggs & Hollingsworth and (2) Winston & Strawn. The amounts of each firm's claim are set out below and are documented by Exhibits containing copies of the firms' invoices that reflect the work performed by each firm on the tax-related matters.

3

### The Scope of This Claim

This claim seeks reimbursement for reasonable attorneys' fees including a reasonable success fee of twice the standard rates of the Attorney Claimants for the work in question, minus the amount paid at the reduced rate of $125 an hour for partners in the firms. That reduced rate has been paid to the Attorney Claimants by individual Benj. Franklin shareholders or by the Benj. Franklin Shareholders Litigation Fund (hereafter "the Lit. Fund").[1] The $125 an hour rate was agreed to by the Attorney Claimants at the time of their retention based on the specific understanding that they would seek a success fee beyond their normal standard rates if they were successful in the view of the shareholder plaintiffs. The clients/shareholder plaintiffs have specifically approved the success fee being requested here.

The Attorney Claimants do not seek reimbursement for legal fees related to the *Winstar*-related lawsuit in the U.S. Court of Federal Claims ("CFC") except for the relatively small amount of work performed by Winston & Strawn attorneys related directly to the tax issues that arose shortly before and during the CFC trial in 1998 and 1999.[2] This work is documented in the supporting materials appended to this claim and it was essential to defending and settling the tax claims at issue.

---

[1] The Lit. Fund also has filed a claim with the FDIC-Receiver for reimbursement of all shareholder contributions to the Lit. Fund, with interest. Because the Attorney Claimants have deducted from their claims all payments previously received by them from their shareholder clients or from the Lit. Fund, there is no duplication in the scope of the two claims.

[2] The *Winstar*-related suit brought on behalf of the Benj. Franklin shareholders is captioned *Suess v. United States*, No. 90-981-C (Fed. Cl.). Don S. Willner is the counsel of record for this case and Thomas Buchanan and other Winston & Strawn attorneys were co-counsel at the trial of the *Suess* case before the CFC. In 2002, after a lengthy trial on damages, the CFC awarded approximately $35 million in damages on the derivative plaintiffs' breach of contract claim. *See Suess v. United States*, 52 Fed. Cl. 221 (2002). This damage award has not yet been finalized by the CFC due to the long-pending tax claim against the Benj. Franklin receivership.

4

It was in 1998 that the shareholders first learned of the tax claim by the IRS based on the Federal Financial Assistance ("FFA") paid to the receivership. (This is discussed in more detail *infra*.) Considering that the IRS claim, with interest and penalties, exceeded all of the damages claimed by the Benj. shareholder in the related *Winstar* litigation, the shareholder plaintiffs and Mr. Willner immediately directed that Winston & Strawn use all of its expert tax resources to analyze the legitimacy of this claim and to prepare any potential defenses. The understanding at that time among the shareholder plaintiffs and the lawyers was that to the extent there were defenses, they would be utilized to defeat the tax claim either before Judge Smith in the pending CFC action, or in a separate action. Ultimately, CFC Judge Smith was asked by Mr. Willner to add the amount of the FFA tax claim to the damages claims of the shareholders based on the fact that the tax claim would not have arisen but for the seizure of the institution. Judge Smith's damages decision did not address this issue directly, and it is a likely subject for the expected appeal to the Federal Circuit after the CFC damage decision is finalized.

In analyzing the FFA issue, Winston & Strawn took several depositions and subpoenaed and reviewed thousands of pages of tax returns and other tax-related documents concerning the FFA in 1998-1999. Numerous research memos were prepared analyzing these tax issues. Ultimately, this entire work product was utilized by the Attorney Claimants to favorably negotiate and settle with the IRS.

This claim also encompasses legal work performed in the last year that is a direct result of the anticipated tax settlement. For example, Spriggs & Hollingsworth has assisted with the preparation of the motion for fairness hearing and related notices to Benj. Franklin shareholders, and also has researched and prepared this and other claims submitted to the FDIC-Receiver, which have been made possible as a result of the tax settlement.

## The Amount of this Claim is Reasonable

The amount of fee payments requested by the claimants reflect well-established legal precedent that attorneys are entitled to contingency or success fees *above* their normal billing rates (or the billing rates of others in their legal community) where counsel have successfully taken on a legal matter that involves significant risk but have not charged a market rate for their services.[3] Here, the work of the Attorney Claimants produced a direct and significant benefit to the receivership and the Benj. Franklin shareholders by preserving a substantial surplus in the receivership, which is now available for distribution by the FDIC-Receiver to the remaining claimants and then to the shareholders of Benj. Franklin. The legal precedent that supports increased or "bonus" legal fees to counsel under these circumstances is discussed in more detail *infra* at pp. 14-18.

It also is important to note that the shareholders represented by the claimant law firms – as well as many other Benj. Franklin shareholders – have consented to the amounts of fees requested by the Attorney Claimants. In particular, Spriggs & Hollingsworth has acted as co-counsel to Don S. Willner, who represents a committee of derivative shareholders who has agreed that the higher fees requested separately by Mr. Willner are reasonable and appropriate. Winston & Strawn represents a large Benj. Franklin shareholder, Robert Suess, who (together with other shareholders in communication with Mr. Suess) also have specifically agreed to the payment of the fees in the amount requested by Winston & Strawn.

---

[3] Due to the fact that certain of the Winston & Strawn tax-related work dates back to 1998 and 1999, the doubling of the standard rate for that particular work is the practical equivalent of interest on those earlier fees at the standard rate.

6

The Attorney Claimants estimate that the amount of stock owned by these shareholders who already have indicated their consent to the amount of this attorneys fee claim represents at least one third of the outstanding shares of Benj. Franklin.[4]

Moreover, the payment of all of the requested attorneys fees will be made from the receivership surplus before its balance is distributed on a *pro rata* basis to all Benj. Franklin shareholders. Thus, the approval of this claim by the FDIC-Receiver will simply permit the legal fees to be paid before the amount of distributable balance is determined. As discussed in detail below, this complies with relevant case law about paying reasonable attorneys fees from a "common fund."

---

[4] Because all Benj. Franklin shareholders (who can be located) will be notified in connection with the anticipated Fairness Hearing about the proposed distributions to the Lit. Fund and to the attorneys, FDIC may assure itself that there is no objection to the payment of the amounts requested by the Attorney Claimants making this submission.

The amount requested by each Attorney Claimant firm is set out on the following chart.

### CLAIM FOR ATTORNEYS' FEES

| Claimant | Number of Hours | Value of Legal Services Using Standard Billing Rates[5] | Doubled Value of Legal Services | Amounts Previously Collected by Each Claimant | Total Fees Requested[6] |
|---|---|---|---|---|---|
| 1. Spriggs & Hollingsworth | 376 | $126,243 | $252,486 | $43,797 | $208,689 |
| 2. Winston & Strawn | 1,457 | $558,041 | $1,116,082 | $181,791 | $934,291 |
| TOTALS | 1,833 | $684,284 | $1,368,568 | $225,588 | $1,142,980 |

---

[5] "Value of Legal Services using Standard Billing Rates" refers to the amounts the Attorney Claimants would have charged through July 31, 2005, using their firms' normal billing rates multiplied by the number of hours actually spent on the tax related work.

[6] The fees requested by Spriggs & Hollingsworth and Winston & Strawn were calculated by subtracting from the doubled value of their legal services, the amounts previously collected by those firms based on the below-market billing rate of $125 per hour for partners in each firm. **The Attorney Claimants reserve their right to supplement this request for fees incurred after July 31, 2005, through the date that the tax settlement is finally approved by all necessary authorities.**

**The Tax Claim and Related Litigation**

As noted above, this claim seeks reimbursement of the Attorney Claimants' legal fees for their litigation and other legal work related to the IRS tax claim and its compromise and settlement. The IRS filed the tax claim in 2002 in the U.S. District Court for the District of Columbia; that action is styled *United States v. Fed. Deposit Ins. Corp.*, No. 02-CV-01427.

On behalf of the same shareholder derivative clients who brought the *Winstar*-related action in the CFC, Mr. Willner undertook two preliminary actions that were key to later resolving the disputed tax issues (Winston & Strawn assisted significantly with the first of these matters and Spriggs & Hollingsworth assisted with both):

(1) In early 2002, Mr. Willner filed an injunctive action against the FDIC in the U.S. District Court in Portland, Oregon, seeking to prevent the FDIC-Receiver from paying the tax demanded by the IRS. The Court issued a temporary restraining order, directing FDIC not to pay the disputed tax. The Court declined to grant a preliminary injunction in light of FDIC's representation that the tax would not be paid without further notice to the shareholder plaintiffs.

(2) When the United States filed its tax collection suit against the FDIC in the U.S. District Court for D.C. in 2002, Mr. Willner filed a motion to intervene and to transfer to the District of Oregon, arguing that the shareholders were the real parties in interest because the $1.2 billion tax claim threatened to eliminate the entire surplus that Benj. Franklin shareholders were entitled to receive. After this intervention and transfer motion was filed, the FDIC staff invited the shareholders' counsel to participate in settlement discussions among the plaintiff United States, the IRS, and the FDIC concerning the tax claim. After joining the settlement discussions, the Benj. Franklin shareholders allowed their intervention and transfer motion to lapse, without prejudice, due to the pendency of the settlement discussions. For the same reason, the

9

shareholders' counsel and the FDIC attorneys also allowed the Portland, Oregon injunctive action to be held in abeyance. Accordingly, while the Benj. Franklin shareholders have never been direct parties to the tax collection suit, their counsel (including the Attorney Claimants here) have acted to preserve the shareholders' rights and have participated directly in considering and rejecting the tax arguments made by the IRS and in discussing and fashioning the settlement of this claim along with FDIC counsel.

## The Proposed Settlement

Under the proposed settlement, the Benj. Franklin receivership will pay $50 million for the taxes owed by the receivership for calendar years 1990 through 2002. The settlement will resolve and close each of those disputed tax years. The parties have agreed that 25% of the first $47 million of this payment will be treated as a payment of tax, and 75% of the $47 million will be treated as a payment of interest. The remaining $3 million will all be treated as interest.[7] This tentative settlement is contingent on a determination by the U.S. District Court in D.C., following a fairness hearing, that the settlement is fair and reasonable to all interested persons. Upon receipt of such a finding and approval by the Court, the FDIC-Receiver will make the $50 million settlement payment to the IRS, and the United States will thereafter dismiss the tax collection suit with prejudice.

Because the proposed settlement must be approved by the U.S. District Court, this claim also is dependent on that Court's approval of the tax settlement after completion of the fairness

---

[7] The designation of a large portion of the settlement payment as interest will allow the FDIC-Receiver to obtain refunds for all or most of the taxes it paid for tax years after 2002 (which are not in dispute). The interest designation will also effectively offset all or a large portion of any future income to the receivership such as a final damage award in the CFC *Winstar* action.

10

hearing. Accordingly, the Attorney Claimants request that the FDIC-Receiver approve this claim but condition its payment on the final approval of the tax settlement by the U.S. District Court.

### Payment of This Claim is Appropriate Under the "Common Fund" or "Common Benefit" Concept

The requested distributions to pay the tax-related legal fees are appropriate under the concept of a "common fund" or a "common benefit" created for a group or class of similarly-situated individuals or entities. In class action litigation, the concept is typically used to justify paying the class's counsel from the damages or settlement fund, which the class counsel helped to create for the common benefit of all members of the class – before the remainder of the common fund is distributed to the class members.[8] Here, the Benj. Franklin shareholders' attorneys worked for the same kind of goal by minimizing the tax owed by the receivership so that a significant surplus would remain for distribution to all shareholders. Thus, the Attorney Claimants are deserving of payment from the "common fund" before the remainder is distributed to the Benj. Franklin shareholders.

Moreover, the proposed payment of legal fees from the receivership estate here is closely analogous to a corporation's paying the expenses of litigation in a derivative case when such litigation provides a benefit to the corporation:

---

[8] Fed. R. Civ. P. 23(h) sets out the procedures to be followed for seeking attorneys' fees in class actions, including notice to all class members with an opportunity for such members to object, and granting the Court discretion to hold a hearing relative to such a proposed award. The Advisory Committee Notes clarify that the rule also applies to cases in which the requesting counsel seeks the Court's approval to pay his/her fees from the damage award or settlement amount, which the counsel's efforts helped to produce. *See* Fed. R. Civ. P. 23(h) Advisory Committee Notes (expressly referencing the "common fund theory that applies in many class actions"). The same is true for awards of attorneys' fees in non-class action suits for which Fed. R. Civ. P. 54(d) sets out the procedures for attorney fee claims. The Advisory Committee Notes similarly clarify that the procedures apply either when a prevailing party is entitled to a fee award or in cases "in which the court must determine the fees to be paid from a common fund."

11

> It is well established that the shareholder-plaintiff in a derivative action is entitled to reimbursement by the corporation for the reasonable expenses of litigation, including counsel fees, when the successful prosecution of the suit has yielded a tangible benefit to the corporation.

7c Wright, Miller & Kane, *Federal Practice and Procedure*, § 841; *see also In re Oracle Sec. Litig.*, 852 F. Supp. 1437, 1445 (N.D. Cal. 1994) ("[A] court may grant fees and expenses to derivative counsel when the derivative suit creates a common fund or confers a substantial corporate benefit."). The "benefit to the corporation" here is the enhanced value of Benj. Franklin's receivership surplus.

In *Goldberger v. Integrated Resources, Inc.*, 209 F.3d 43, 47 (2d Cir. 2000), the Court explained that where attorneys succeeded in creating a "common fund" from which members of a class would be compensated for a common injury, the attorneys whose efforts helped create the fund may receive a reasonable fee from the fund before distributions are made to all class members. The Supreme Court recognized the same doctrine over a century ago in *Trustees v. Greenough*, 105 U.S. 527, 533 (1881), and more recently reiterated its application to cases in which a litigant has recovered a "common fund for the benefit of persons other than himself" so that the litigant's attorney may recover "reasonable attorney's fees from the fund as a whole." *Boeing Co. v. Van Gammert*, 444 U.S. 472, 478 (1980). In *Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 392 (1970), the Court described this procedure as a "judge-created exception" to the general rule that parties are expected to pay for their own counsel fees. *See also Passtou, Inc. v. Spring Valley Ctr.*, 501 A.2d 8, 12 (D.C. Cir. 1985) ("The common fund or [common] benefit exception to the American Rule is fully recognized in the District of Columbia.")[9]

---

[9] *See also Enterprise Energy Corp. v. Columbia Gas Transmission*, 137 F.R.D. 240, 248 (S.D. Ohio 1991) ("It is well-settled that a lawyer who recovers a common fund for the benefit of a class of persons in commercial litigation is entitled to reasonable attorneys' fees and expenses

12

The same concept has been used in cases that were not formal class actions and where an actual "fund" was not created, but where (as here) similar equities were present:

> [W]hen . . . a [common] fund is for all practical purposes created for the benefit of others, the formalities of the litigation – the absence of an avowed class suit or the creation of a fund . . . hardly touch the power of equity in doing justice as between a party and the beneficiaries of his litigation.

*Sprague v. Tironic Nat'l Bank*, 307 U.S. 161, 167 (1939). *See also Mills*, 396 U.S. at 396 (noting that the key to a common fund award was whether "petitioners have rendered a substantial service to the corporation and its shareholders").

The same is true regarding this claim for attorneys' fees. There is no new "fund" created by the efforts of all counsel here, but the proposed settlement has reduced the tax claim from $1.2 billion to a tax payment of $50 million, which will allow the Benj. Franklin receivership surplus to remain significantly positive. This will permit the remainder of that surplus to be distributed *pro rata* to all Benj. Franklin shareholders. The D.C. Circuit has held that the common fund "doctrine allows [payment to] a party who creates, *preserves* or *increases the value* of a fund[.]" *Swedish Hosp. Corp. v. Shalala*, 1 F.3d 1261, 1265 (D.C. Cir. 1993) (emphasis added). And counsel to non-parties (like the Attorney Claimants here) have been found entitled to such common fund fee awards.[10]

---

*payable from that fund.*") (emphasis added)); *In re Copley Pharmaceutical, Inc.*, 1 F. Supp. 2d 1407, 1409 (D. Wyo. 1998) (same).

[10] *See Gottlieb v. Barry*, 43 F.3d 474, 491 (10th Cir. 1994) (allowing fees to be paid from the common fund to an objector's attorney who successfully increased the amount of the fund for its beneficiaries); *White v. Auerbach*, 500 F.2d 822, 828 (2d Cir. 1974) (objectors may receive attorneys' fees and expenses "where a proper showing has been made that the settlement was improved as a result of their efforts.")

Moreover, if such a common fund distribution to shareholders' counsel is not paid before the general receivership distribution to all Benj. Franklin shareholders, there would be unjust enrichment to those passive shareholders who did not bear any of the costs of the prior litigation proceedings or of the successful settlement efforts. *See Boeing,* 444 U.S. at 478 ("The doctrine rests on the perception that persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at the successful litigant's expense."); *Hall v. Cole,* 412 U.S. 1, 5-6 (1973) (same). *See also Swedish Hosp. Corp.,* 1 F.3d at 1265. ("[U]nless the costs of litigation are spread to the beneficiaries of the fund they will be unjustly enriched by the attorney's efforts."); *Democratic Cent. Comm. of the Dist. of Columbia v. Washington Metro. Area Transit Comm'n,* 3 F.3d 1568, 1572 (D.C. Cir. 1993) ("The award of attorney's fees in common fund cases is based on the historic power of equity[.]").

### *Increased* Legal Fees are Appropriate Here

Even after adding the "success fee" requested by the Attorney Claimants, the total requested payment here is approximately 3% of the $42 million receivership surplus that has been preserved by the efforts of all counsel in this matter. In contrast, awarding attorneys 25% of a common fund has been described as a typical benchmark for a success fee award. *Manual for Complex Litigation (Fourth)* § 14.121 n.488 (2004) (citing *Paul, Johnson, Alston & Hunt v. Graulty,* 886 F.2d 268, 272 (9th Cir. 1989) as well as several studies); *see also Florin v. Nationsbank of Ga., N.A.,* 60 F.3d 1245, 1249 (7th Cir. 1995) (benchmarks range between 20% and 30%); *but see in re Cendant Corp. Prides Litig.,* 243 F.3d 722, 736-37 (3d Cir. 2001) (rejecting the formalistic use of a benchmark to determine attorney compensation).

The approach used by the Attorney Claimants here makes use of the alternative "Lodestar" method of determining attorneys fees.[11] This approach permits *multiplication* or enlargement of an attorney's normal fees, in many different ways, depending on the circumstances involved in the particular case. Federal Courts have declared this approach to be available as an alternative to the "percentage of the common fund" approach.[12]

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-719 (5th Cir. 1974) sets forth twelve specific factors to use in making an attorneys fee determination, which many other Circuits and District Courts also have employed. The *Johnson* factors are.

(1)  the time and labor involved;
(2)  the novelty and difficulty of the legal and factual questions;
(3)  the skill required to perform the legal service properly;
(4)  the preclusion of other employment by the attorney;
(5)  the customary fee;
(6)  any prearranged fee (whether fixed or contingent);
(7)  time limitations imposed by the client or the circumstances;
(8)  the amount involved and the results obtained;
(9)  the experience, reputation, and ability of the attorneys;
(10) the "undesirability" of the case;
(11) the nature and length of the professional relationship with the client; and
(12) the awards in similar cases

*Id.* at 717-19.

Most jurisdictions agree that even if a percentage of recovery method is used, it should be checked for reasonableness by performing an evaluation of the *Johnson* factors or other similar

---

[11] The Lodestar approach is described in *Hensley v. Eckerhart*, 461 U.S. 424, 433-34 (1983), and in *Wash. Metro. Area Transit Auth. v. United States*, 57 Fed. Cl. 148 (2003).

[12] *See Goldberger*, 209 F.3d 47-48 (describing the two methods and noting that at least seven Circuits have declared that district courts have the discretion to use either method); *see also Swedish Hospital Corp.*, 1 F.3d at 1268-1270 (the D.C. Circuit similarly evaluated the strengths and weaknesses of the two approaches and awarded legal fees of 20% of the "common fund" found by the Court); *Camden I Condo. Ass'n v. Dunkle,* 946 F.2d 768, 774 (11th Cir. 1991) (attorneys' fees in common fund cases are committed to the sound discretion of the court, which must consider the individual circumstances of each case).

considerations.[13] *See, e.g., Gottlieb v. Barry,* 43 F.3d 474, 482-483 (10th Cir. 1994) (whether the percentage or Lodestar method is used, the court must consider the twelve *Johnson* factors); *Camden I Condo. Ass'n,* 946 F.2d at 775 (11th Cir. 1991) (the *Johnson* factors should be used in evaluating, setting, and reviewing percentage fee awards in common fund cases).

**Application of the *Johnson* Factors to the Attorney Claimants' Work**

The Attorney Claimants Spriggs & Hollingsworth and Winston & Strawn submit that the specific *Johnson* factors that justify the doubling of their normal billing rates (less amounts collected) are as follows:

— **The time and labor involved**: The time spent and an explanation of each attorney's work on each day are included in the Exhibits. To say the least, the time was extensive, and the risk great, but due to successfully settling the tax issues, much more time-consuming and expensive tax litigation has been avoided.

— **The novelty and difficulty of the legal and factual issues and the skill required to properly perform the legal service**: The IRS tax claim was based on its assertion that the Federal Financial Assistance ("FFA") paid to the Receiver was taxable income. Because few RTC and FDIC receiverships have had a significant surplus and because the Benj. Franklin receivership repaid all of its FFA with interest, the application of federal tax based on FFA in this case presented a novel issue. There are no reported decisions on FFA tax, and no

---

[13] *The Manual for Complex Litigation (Fourth)* at § 14.121 lists nine similar factors to be considered in making fee awards, noting that they will not all apply in every case. *See also Copley Pharmaceutical,* 1 F. Supp. 2d at 1413, in which the Tenth Circuit noted that the weight of the *Johnson* factors will differ in various common fund cases, and rarely will all twelve factors apply.

published literature or scholarly articles. Moreover, the relevant documents were massive, incomplete and disorganized. Notwithstanding, the Attorney Claimants presented a very strong case on a highly complicated and novel taxation theory to a very skeptical and tough audience, the IRS. The result was a significant victory for the Benj. receivership and Benj. shareholders – a settlement whereby the original tax claim was reduced by 96%, from $1.2 billion to $50 million.

— **Customary fees and prearranged fees**: The customary fees of Spriggs & Hollingsworth and Winston & Strawn are not in doubt; they are set out for each relevant billing period in the Exhibits submitted by these claimant firms.[14] The prearranged sub-market fee of $125 per hour has been discussed above. In the case of Winston & Strawn LLP, it was paid 32% of its normal hourly rates for its work on the FFA issue. For Spriggs & Hollingsworth, it was paid approximately 35% of its normal hourly rates for all tax-related work.

— **The amount involved and results obtained**: There is no dispute that the IRS filed suit claiming that $1.2 billion of tax and interest was owed by the Benj. Franklin receivership, and that this suit will shortly be settled for a $50 million

---

[14] The legal bills of Winston & Strawn cover two time periods: August 1998 to December 1999 and August 2002 to the present. As noted above, although the IRS lawsuit was filed in 2002, Winston & Strawn began working on the FFA matter in August 1998 at the direction of the plaintiff shareholders. It was at that time that the plaintiff shareholders first learned of the IRS claim, and they assigned Winston & Strawn the task of analyzing and defending against this IRS claim. The plaintiff shareholders requested that Winston & Strawn bill their time on the FFA issue to the *Winstar*-related lawsuit account, rather than open a new matter. Winston & Strawn has gone back and reviewed all of its bills on the *Winstar*-related matter, and redacted and excluded any time that was not dedicated solely to the FFA matter on that account. After the IRS lawsuit was filed in 2002, Winston & Strawn opened a separate billing matter under the name Robert Suess, and all of its time on that matter has been dedicated to the IRS claim on the FFA issue. The bills to Robert Suess cover the period August 2002 to the present.

payment by the FDIC-Receiver (assuming the Court approves the settlement). This is an extremely favorable result.

— **The experience, reputation, and ability of the attorneys**: Counsel from Winston & Strawn provided expert tax analysis and advice as well as expert skill in negotiating all of the tax issues with the IRS and the Department of Justice Tax Division. Winston & Strawn is also one of the nation's largest law firms, and it is regularly recognized as one of the nation's top litigation law firms. Along with Winston & Strawn, the Spriggs & Hollingsworth attorneys also provided expert litigation and counseling support as well as banking and receivership expertise to the joint effort of all shareholders counsel and FDIC attorneys to settle the tax claim.

## The Claims Bar Date and Priority of Claims

Although the subject receivership was instituted in 1990 and its "claims bar date" for most claims would therefore have expired some years ago, this claim by shareholders' counsel qualifies for an exception from the typical claims bar date. This is because the Attorney Claimants did not perform services for Benj. Franklin FS&LA prior to its receivership in 1990, but rather performed legal services that inured to the benefit of the Benj. Franklin receivership (primarily from 1998 to the present). Moreover, this claim may appropriately be paid before the remaining balance is distributed to the Benj. Franklin shareholders because common shareholders are last on the priority distribution list.

## Supporting Documentation

The supporting documents included as part of this claim are attached hereto and are described in the Appendix to the Exhibits

# APPENDIX TO EXHIBITS

| Document | Exhibit No. |
|---|---|
| Summary of Spriggs & Hollingsworth Billings (actual and standard billing rates) | 1 |
| Bills of Spriggs & Hollingsworth (2002 to present) | 2 |
| Summary of Winston & Strawn Billings (actual and standard billing rates) | 3 |
| Bills of Winston & Strawn (1998-1999, 2002 to present) | 4 |

**EXHIBITS OMITTED**