FDIC
Federal Deposit Insurance Corporation
550 17th St. NW Washington DC, 20429 Legal Division

**FOR SETTLEMENT PURPOSES ONLY**
**SUBJECT TO FED. R. EVID. 408**

March 17, 2004

VIA FACSIMILE AND REGULAR MAIL
Henry Darmstadter
Trial Attorney
Tax Division, 7th Floor
Department of Justice
555 4th Street, N.W.
Washington, DC 20001

Re: *United States v. FDIC*, Civ. No. 02-1427 (D.D.C.)

Dear Hank:

This letter is provided by the FDIC in connection with the parties' discussions with respect to the federal income tax liability of the FDIC as Receiver for Benj. Franklin Federal Savings and Loan Association ("Benj. Franklin"). Specifically, we respond to your letter dated December 19, 2003, and to the position and views set forth therein by IRS' National Office and DOJ (collectively, "you" or "your"), regarding the timing of deductions for $258 million in post-insolvency interest expenses previously omitted from the receivership's income tax returns.

We heartily accept your invitation for our comments and analysis regarding your position on the deduction timing issue. We especially welcome this opportunity to provide you, per your request, with "any available authority that would legally require or obligate a receivership to pay interest on the FFA to FDIC/Corporate."

In your letter, your position is succinctly set forth in the last paragraph on page three, which provides, in pertinent part:

> [I]t appears that any legal obligation on the part of the Receivership for the *payment of interest* would be contingent and entirely dependant upon the Receivership having first full[y] paid those claims having a higher-priority to that of the claim for interest on the FFA. At the very least, because *interest on the FFA cannot be paid* until higher priority claims are satisfied, including repayment of principal for the FFA, interest cannot accrue for tax purposes until the taxable year in which it can be demonstrated that all higher-priority claims will be satisfied with a sufficient surplus remaining from which interest could be paid. Prior to this occurrence, *payment of interest* on the FFA is contingent and it is

> very unlikely that any interest on the FFA could have properly accrued under the "all-events" test.

(emphasis added).

The foregoing conclusion is flawed in several respects. As a matter of law, a receivership's obligation to pay post-insolvency interest ("PII") on federal financial assistance ("FFA") becomes fixed and certain at the inception of the receivership whereupon FDIC Corporate becomes subrogated to the depositors' claims, including interest, following its payment of the FFA, usually to an assuming bank. 12 U.S.C. § 1821(f) and (g). As we further explain, your assumptions concerning the FDIC's accounting for PII, and, specifically, FDIC policy concerning its accrual, are simply mistaken.[1] Finally, your reliance on cases involving accrual-basis taxpayers in bankruptcy proceedings is misplaced and likely rests on your confusion regarding the liability for payment of the interest, versus the actual *payment* of the interest (the occurrence of which is <u>not</u> a condition for the receivership's liability for the interest). In the case of the Benj. Franklin receivership, the interest liability unquestionably arose on September 7, 1990. Thus, 1990 is the year in which the interest accrued and is properly deductible. We discuss our position in more detail below.

## 1. The FDI Act is the Source of the Interest at Issue

The Federal Deposit Insurance ("FDI") Act establishes the accrual of the liability on the subrogated claim at the inception of the receivership. The Corporation's obligation to pay insured deposit claims arises under 12 U.S.C. § 1821(f) and (g), which state in pertinent part that:

> **(f) Payment of insured deposits**
>
> (1) [P]ayment of the insured deposits...*shall be made by the Corporation as soon as possible*, subject to the provisions of subsection (g) of this section, either by cash or by making available to each depositor a transferred deposit in a new institution in the same community or in another insured depository institution in an amount equal to the insured deposit of such depositor, . . . .
>
> **(g) Subrogation of Corporation**
>
> (1) **In general** – [T]he Corporation, *upon the payment to any depositor* as provided in subsection (f) of this section . . . *shall be subrogated to all rights of the depositor against such institution . . . to the extent of such payment or assumption.*

---

[1] *See, e.g.*, page 3 of your letter ("we believe it is the policy of the FDIC not to accrue post-insolvency interest on creditor claims until at least 95% of the principal of accepted claims has been paid"). Indeed, the obverse is true, as discussed *infra*.

> (2) **Dividends on subrogated amounts** – The subrogation of the Corporation under paragraph (1) . . . shall include the right on the part of the Corporation to receive the same dividends from the proceeds of the assets of such institution and recoveries on account of stockholder's liability as would have been payable to the depositor on a claim for the insured deposit . . . .

(emphasis added).

On September 7, 1990, the RTC was appointed Receiver for Benj. Franklin. Pursuant to a purchase and assumption transaction consummated on the same date, the Bank of America ("B of A") assumed Benj. Franklin's insured deposit liabilities (approximately $2.7 billion). In order to induce B of A to assume such deposit liabilities, however, RTC Corporate had to fund B of A with an equivalent amount (net of assets and fees); RTC Corporate thus became subrogated to all the rights of the depositors against the assets of the receivership estate. This is the "subrogated deposit claim," owed by the Receiver to RTC Corporate.

Operationally, the subrogated deposit claim in the Benj. Franklin receivership proceedings was evidenced by a Corporate Proof of Claim ("CPOC") filed with the Receiver on behalf of RTC-Corporate, a copy of which is attached hereto as Exhibit A. The CPOC is actually a sworn affidavit in which the deponent, Debra E. Crow, states in paragraph 3 that, beginning *on September 7, 1990*, "the Corporation *paid* the insured deposit claims of certain depositors" in the aggregate sum of $2,615,571,923.04 (emphasis added). Additionally, enumerated as item no. 4 of its claim, the CPOC clearly sets forth RTC Corporate's claim to "such interest as may be allowed by law" on its subrogated claim.

The financial statements for the Benj. Franklin receivership did not reflect accrued interest on RTC's subrogated deposit claim until 1994. Nevertheless, the interest was being accrued "off book," commencing on September 7, 1990. The RTC made a retroactive adjustment to the Benj. Franklin financial statement in 1994 that recognized the cumulative amount of the accrued interest because the receivership had reached a 95% pay-out level. This was an established receivership accounting practice in the 1990s implemented by the RTC to ease the administrative burden of operating literally hundreds of receiverships, most of which were not likely to ever pay the interest claims. The 95% threshold demonstrated a proven level of receivership financial capability.

Contrary to your understanding of FDIC accounting policies, the FDIC's financial statements for Benj. Franklin refer only to the *recognition* of PII under the 95% threshold standard, and *not* the *accrual* of the PII. This is evident from the face of the Benj. Franklin financial statements; *see, e.g.*, statement for the year ending December 31, 2002, which states in footnote 6 as follows:

> 6. Estimated Interest on Claims: *Applicable law governs or directs the payment of post-insolvency interest to creditors* holding proven claims against the receivership estate, including the claim(s) held by the FDIC in its Corporate capacity. Post-insolvency interest is the interest paid on

> proven creditor claims, under certain circumstances, after a receiver is appointed. Uncertainties exist as to the universe of creditors whose claims will ultimately be allowed and whether creditors will receive the full principal amount of proven claims against the receivership estate or any post-insolvency interest. No distribution will be made to holders of equity interests until after allowed creditor claims have been paid principal and any post-insolvency interest in full. Generally, the estimated liability for the total amount of post-insolvency interest payable respective to creditors' claims *is recognized in these financial statements* when at least 95% of the principal of proven creditor claims has been paid.

(emphasis added).

As you know, the Benj. Franklin receivership paid about $258 million of PII in the aggregate. It consists almost entirely of interest on the subrogated deposit claim. For unknown reasons, the tax preparers for the receivership did not deduct it in the taxable income calculations. There appears to be no dispute that in order to arrive at the correct amount of tax that may be owed by the Benj. Franklin receivership, the tax returns should properly account for the PII.

**2. FDIC Corporate is entitled to recover Interest on its Subrogated Claim**

The right of the FDIC to collect PII on its subrogated claim is founded both on settled law governing the rights of depositors to collect interest as well as long-standing public policies intended to protect the integrity of the FDIC's insurance funds. The litany of relevant legal authorities was set forth and explained in a recent federal district court case, *Golden Pacific Bancorp v. FDIC*, No. 95 Civ. 9281(NRB), 2002 WL 3185395 (S.D.N.Y. Dec. 26, 2002). There, the very issue of the FDIC Corporate's right to collect PII on its subrogated claim was adjudicated. In *Golden Pacific Bancorp*, FDIC Corporate was paid over $11MM in PII from the Receiver, based on a total subrogated claim amount of $23MM. It was undisputed that:

> The FDIC calculated post-insolvency interest *from the date of the expenditure* until the date of repayment by FDIC-R at a rate of 9% based on the amount of the funds the FDIC-C had paid to insured depositors.

*Id.* at *2 (emphasis added).

Golden Pacific Bancorp ("GPB"), as the holding company of the failed bank, brought a derivative action against the FDIC claiming, *inter alia*, that FDIC Corporate was unjustly enriched, at GPB's expense, by the payment of PII on its subrogated claim. The Court dismissed GPB's arguments, noting first the FDIC's express statutory basis for its subrogated claim:

> [I]t is clear under the applicable Federal Deposit Insurance Act in existence at the time that once the FDIC-C fulfilled its insurance obligation to depositors, it was subrogated to their rights: '[T]he [FDIC],

> upon the payment to any depositor as provided in [12 U.S.C. § 1821(f)], shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment.' 12 U.S.C. § 1821(g) (1982). Here, it is undisputed that the FDIC-C fulfilled its insurance obligation to depositors. Thus, the only remaining question is whether interest payments are among the 'rights of the depositor' under the language of 12 U.S.C. § 1821(g) and thus whether the FDIC-C was entitled to interest. We answer this question in the affirmative.

*Id.* at *5.

The Court then explained the authority for the FDIC's right to PII, beginning with a chronology of the relevant case law precedent:

> The general right of a creditor of a national bank in default to receive post-insolvency interest on principal amounts owed to the creditor was established as far back as 1876, in the case of *Nat'l Bank of the Commonwealth v. Mechanics Nat'l Bank*, 94 U.S. 437, 24 L.Ed. 176 (1876). There, the Supreme Court held: 'The interest lawfully accruing upon each of [the creditors' claims] was as much a part of it as the original debt. The creditor had the same right to the payment of the one as of the other.' *Id.* at 439-40. Though this case does not deal specifically with the rights the FDIC inherits under the Federal Deposit Insurance Act (as neither were then in existence), it does demonstrate that creditors' rights in a liquidation do include the right to interest.
>
> Subsequent cases, however, do address the rights of the FDIC to interest as subrogee. In *First Nat'l Bank in Humboldt*, 523 N.W.2d 591 (Iowa 1994), the Supreme Court of Iowa held that the right to post-insolvency interest was one of the rights to which the FDIC-C became entitled when it acted to fulfill its obligation to depositors. *Id.* at 595. Under such circumstances, the Court concluded, '*Congress not only authorized FDIC corporate to recover interest on the use of money from the insurance fund, but in fact made it FDIC corporate's fiduciary duty to do so*.' *Id.* Though we recognize that a state court's interpretation of federal law is not binding, *Hurwitz v. Sher*, 789 F.Supp. 134, 138 (S.D.N.Y.1992), we nevertheless find the reasoning of the Court in *First Nat'l Bank in Humboldt* persuasive, and adopt it here.

*Id.* (emphasis added).

The Court then further explained the FDIC's fiduciary duty to recover PII by underscoring the significance of PII in protecting the fiscal integrity of the Bank Insurance Fund as a matter of public policy:

> As that Court noted, the funds that the FDIC advances to fulfill its insurance obligations to depositors come from its bank insurance fund, a fund that is financed by assessments on the deposits of insured banks. *First Nat'l Bank in Humboldt*, 523 N.W.2d at 594; 12 U.S.C. §§ 1821(a)(5), 1817(b). The Court continued:
>
>> When these insurance funds are not 'otherwise employed' in securing the accounts of insured depositors, the [Federal Deposit Insurance Act] requires them to be "invested in obligations of the United States or in obligations guaranteed as to principal and interest by the United States." [12 U.S.C.] § 1823(a)(1). This provision reflects Congress' intent that money in the deposit insurance fund *bear interest in order to protect the fiscal integrity of the fund.... When insurance funds are diverted from investments to finance the liquidation or purchase and assumption of a failed bank, the same concerns for fiscal integrity apply*.
>
> *First Nat'l Bank in Humboldt*, 523 N.W.2d at 594-95. [footnote]

*Id.* (emphasis added).

Lastly, the Court noted that the payment of PII also served to further the congressional intent to protect the integrity of the FDIC insurance funds since the alternative (*i.e.*, not allowing collection of PII) would be tantamount to providing a source of profit to the shareholders at the expense of the FDIC:

> Moreover, the Eighth Circuit's decision in *FDIC v. Citizens State Bank of Niangua*, 130 F.2d 102 (8th Cir. 1942), is instructive. In that case, the Commissioner of Finance of the State of Missouri was attempting to distribute surplus funds to the failed bank's stockholders instead of paying interest to creditors, including the FDIC. *Id.* at 103. The relevant language of the predecessor of the Federal Deposit Insurance Act, the Federal Reserve Act, was nearly identical to the language at issue here. It stated that the Corporation, 'upon the payment of any depositor . . . , shall be subrogated to all rights of the depositor against the closed bank to the extent of such payment.' 12 U.S.C. § 264(l) (7) (1940). The Commissioner argued that the 'to the extent of such payment' language limited the FDIC to recovering only the sum that it had paid out. *Citizens Bank of Niangua*, 130 F.2d at 103. Rejecting the Commissioner's argument, the Court concluded that the rights attained by the FDIC 'obviously include[ ] the usual and inherent incident of interest for the period that the bank's obligation for the deposit remains unsatisfied as against the Corporation, if a surplus is available for that purpose.' *Id.* at 104. As in *First Nat'l Bank in Humboldt*, the Court noted Congress's intent to protect the finances of the insurance fund, observing that '[n]either the purpose of the [Federal

> Reserve Act] nor its legislative history evidences any philanthropic intent, in a situation such as this, to allow the use of the [FDIC's] funds to become a source of profit to stockholders of a defaulting bank, at the expense of the [FDIC].' *Id.* at 104 n 6.
>
> In light of these decisions, and in view of the importance of maintaining the bank insurance fund, we hold that the FDIC is entitled to the payment of interest on the funds that it extends when it is subrogated to the rights of depositors.

*Id.* at 6.

Accordingly, the obligation for a receivership to pay interest on FFA to FDIC Corporate is settled law, pursuant to *Golden Pacific Bancorp*, and the various cases and public policy grounds set forth therein. Moreover, as shown by the governing provisions of the FDI Act and the foregoing legal authorities, the receivership's liability arises and becomes fixed and unconditional the moment that FDIC Corporate uses its insurance funds to pay for deposit liabilities, or, stated another way, a receivership's liability arises contemporaneously with the creation of FDIC Corporate's subrogated claim. We explain further, below, in the context of the "all events test."

**3. The Interest Accrual Deduction**

As you state in your letter, IRC § 163 states that a corporation may deduct all interest paid or accrued within the taxable year. The standard for determining when an expense that represents interest paid or accrued has been incurred for federal income tax purposes has been the "all events" test, which states that:

> Sec. 461(h)(4) ALL EVENTS TEST – [T]he all events test is met with respect to any item if all events have occurred which determine the fact of liability and the amount of such liability can be determined with reasonable accuracy.

Further, for taxpayers using the accrual method, such as the Benj. Franklin receivership, the test requires that three elements be met during the years at issue before accrual of an expense would be allowed. The elements are set forth in Treas. Reg. § 1.461.1(a)(2) as follows:

> *Taxpayer using an accrual method* – (i) *In general.* Under an accrual method of accounting, a liability…is incurred, and generally is taken into account for Federal income tax purposes, in the taxable year in which [1] all the events have occurred that establish the fact of the liability, [2] the amount of the liability can be determined with reasonable accuracy, [3] and economic performance has occurred with respect to the liability.

The third factor, economic performance, is met upon the accrual of interest. As Treas. Reg. §1.461-4 provides:

> (e) *Interest.* In the case of interest, economic performance occurs *as the interest cost economically accrues*, in accordance with the principles of relevant provisions of the Code.

Thus, as your letter states, the only issue in dispute here regarding the application of the "all events test" is the correctness of your position on whether the "obligation to pay interest on the FFA was uncertain and contingent."

The PII on the subrogated deposit claim properly accrued in 1990 under the "all events test" for the simple reason that the establishment of the receivership's liability for PII was **not** subject to any conditions or contingencies. The liability for PII was "fixed" the moment FDIC Corporate became subrogated to the rights of the depositors.

Plainly, the legal authorities already cited above support our position. Nowhere does *Golden Pacific Bancorp*, or any of the authorities relied on therein, state that FDIC Corporate's right to collect PII on its subrogated claim is contingent upon the satisfaction of any conditions other than, obviously, the diversion of FDIC insurance funds "to finance the liquidation or purchase and assumption of a failed bank." *First Nat'l Bank in Humboldt, supra*, 523 N.W.2d at 594-95. On the contrary, if the express intent of Congress is to protect the fiscal integrity of the FDIC's insurance funds by, *inter alia*, allowing PII to be collected by FDIC Corporate, then it would be illogical to assert that the PII could only accrue upon the fulfillment of certain conditions. *A fortiori*, if it is FDIC Corporate's fiduciary duty, in its administration of the insurance funds, to collect PII, then it would likewise be patently irrational for the FDIC's own regulations and policies to preclude the accrual of PII on the subrogated claim amount.

Yet your letter takes that very position, based primarily on a misreading of 12 C.F.R. § 360.3 as imposing conditions on the *accrual*, rather than the payment, of interest. The plain language of that section shows that it is intended to govern the order of distribution payment only.[2] It simply does not speak to the issue of the accrual of interest as a matter of receivership accounting.[3]

---

[2] Under the distribution scheme in 12 C.F.R. § 360.3, insured deposit claims, including those of the Corporation as subrogee, are treated as category 6 claims. PII on the subrogated deposit claim is treated as a category 7 claim. The rules governing the calculation and distribution of PII to creditors with proven claims for FDIC administered receiverships established after June 13, 2002 are set forth at 12 C.F.R. § 360.7.

[3] *See, e.g.*, section 360.3(d): "All unsecured claims of any category or class or priority described in paragraphs (a)(1) through (a)(10) of this section shall be *paid* in full . . . before any claims of lesser priority are *paid*."

Based on this misreading of section 360.3, you then draw the following incorrect conclusions regarding FDIC accounting policy on the accrual of PII:

> Because of the uncertainty regarding the availability of such funds, *it is our understanding* that the lower priority claims are not immediately accrued on the books of receiverships administered by the RTC/FDIC. For example, *we believe* it is the policy of the FDIC not to accrue post-insolvency interest on creditor claims until at least 95% of the principal of accepted claims has been paid.

(emphasis added).

Your expressed understanding is simply wrong. The FDIC has never interpreted section 360.3 as precluding the *accrual* of PII "until at least 95% of the principal of accepted claims has been paid." On the contrary, the "95%" guideline applies only to the recognition of the PII accrual on receivership financial statements, as already noted above. As a matter of law, the FDIC's interpretation of its own regulation would be accorded judicial deference. *See, e.g., Chevron USA, Inc. v. Natural Resources Def. Council, Inc.*, 467 U.S. 837, *reh'g denied*, 468 U.S. 1227 (1984).

Likewise, your analogy to the bankruptcy context incorrectly assumes that the accrual of PII is subject to certain conditions or contingencies. Since it is not, bankruptcy law simply has no application to the deduction timing issue here, as demonstrated by the very cases you cite. *See, e.g., Matter of West Texas Marketing Corp.*, 54 F.3d 1194, 1197 (5th Cir. 1995) ("Implicit in the obligation under § 726 to pay postpetition interest . . . is the *necessary condition* that sufficient assets remain following distributions under § 726(a)(1)-(4).") (emphasis added). Under Bankruptcy Code § 726, a debtor's obligation to pay postpetition interest, and a creditor's corresponding right to receive it, arises "only if the estate is sufficiently solvent to pay such interest." *In Re Dow Corning Corp.*, 270 B.R. 393, 404 (E.D. Mich. 2001). Thus, postpetition interest rights and obligations are, by nature, conditional, as the court further held in *Dow Corning Corp.*: "A right to interest which is based on this statute is, *by definition*, contingent on the estate having funds on hand to make that payment after satisfying all higher-priority claims." *Id.* (emphasis added).

By contrast, in our case, no such inherent condition exists that would have precluded the accrual of the PII on September 7, 1990, since a receivership's obligation to pay PII is fixed contemporaneously with the creation of the subrogated claim. In short, unlike Title 11, section 360 does *not* impose conditions on the accrual of interest.

In closing, we appreciate your willingness to consider our position on this timing issue. We are confident that our explanation of the factual and legal basis for the requested interest expense deductions will resolve your questions.

Very truly yours,

Catherine Topping
Counsel

Attachment

cc: Don S. Willner, Esq.
621 S.W. Morrison Street
Suite 1415
Portland, Oregon 97205
Fax: (503) 273-8842

Rosemary Stewart, Esq.
Spriggs & Hollingsworth
1350 "I" Street, N.W.
9th Floor
Washington D.C. 20005
Fax: (202) 682-1639

Michael C. Moetell, Esq.
Winston & Strawn
1400 L. Street, N.W.
Washington D.C. 20005-3502
Fax: (202) 371-5950

CORPORATE PROOF OF CLAIM

In Re Liquidation of )
BENJAMIN FRANKLIN S&L ASSN. )
PORTLAND, OREGON 7166 )

COUNTY OF JOHNSON )
STATE OF KANSAS )

Debra E. Crow, being duly sworn deposes and says:

That she is the North Central Regional Office Claims/Settlement Specialist of the Resolution Trust Corporation, a corporation organized and existing under and by virtue of an act of the Congress of the United States with its principal office located in the city of Washington, District of Columbia (hereinafter called the "Corporation") and that she is duly authorized to execute this proof of claim on its behalf.

That Resolution Trust Corporation (hereinafter called "Receiver") to possession of the business and property of the above-named institution for the purpose of liquidation on September 7, 1990;

That pursuant to the provisions of the Federal Deposit Insurance Act Title (12 U.S.C. Sec. 1811 1831) and the Federal Home Loan Bank Act (12 U.S.C. 1421 et seq.) the Corporation paid the insured deposit claims of certain depositors (hereinafter called "depositors"; in the above closed insured institution from September 7, 1990 through September 30, 1991 in the aggregate sum of 2,615,571,923.04, and duly received written assignments of said depositors claims against said closed association for th insured deposit claims so paid;

That the names of said depositors and the amounts of their insured deposit claims so paid by and assigned to the Corporation are set forth in exhibit(s) attached hereto and made a part hereof;

That the Corporation requests and reserves the right to file such further claims against said association and said receiver based on claims fo any such insured deposit claims paid by it under the provisions of the Federal Deposit Insurance Act and the Federal Home Loan Act, for which clain have not yet been filed by depositors in said institution, and to file further claims for the whole or any portion of any assigned claim of any depositor heretofore filed where evidence is disclosed that would authorize the preference or priority in the payment of such claim or claims by reason of statutory authority or because of equitable ownership of specific assets or their traceable substitutes, or otherwise.

WHEREFORE, the Corporation makes claim against the said association an the said receiver as follows, to wit:

1. For the sum of -0- on deposit claims assigned to it on which preference or priority in the distribution of the assets in the hands of the Receiver is requested, being the sum of the items set forth in Exhibit "A" attached hereto and made a part hereof;

2. In the sum of 2,615,571,923.04 for the remainder of said deposit claims assigned to it after deducting the amounts set forth in paragraph (1) above, being the sum set forth in Exhibit "B" attached hereto and made a part hereof;

3. In the sum of 34,010,382.99 for the general unsecured creditor claims assigned or purchased by the Corporation exclusive of those identified in paragraph (2) above, being the sum set forth in Exhibit "C" attached hereto and made a part hereof;

4. For such interest as may be allowed by law.

RESOLUTION TRUST CORPORATION

By D. Crow

Subscribed and sworn to this ____ day of ____________________ 19___, before me, a notary public, in and for said State of Kansas.

____________________
Notary Public Signature

Ex. A

Corporation POC Breakdown calculations
Insured Deposit Portion
General Creditor Portion
Corporation POC Total

| FTAS ACL. A/C | TYPE | DIST G/L DESCRIPTION | DIST NO. | DIST A/C NO. | DIST G/L BALANCE | FTAS & SACS DEBITS | CREDITS | COMBINED BALANCE | W DIST SPLIT | SACS SPLIT |
|---|---|---|---|---|---|---|---|---|---|---|
| [illegible] | | A/P Taxes | 115 | [illegible] | [illegible] | 0.00 | 0.00 | [illegible] | 0.00 | [illegible] |
| | | SUBTOTAL [illegible] | | | [illegible] | [illegible] | 0.00 | [illegible] | 0.00 | [illegible] |
| [illegible] | | Batch Context Errors | [illegible] | [illegible] | [illegible] | 0.00 | [illegible] | 0.00 | 0.00 | 0.00 |
| [illegible] | | [illegible] Clearing | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | [illegible] | [illegible] | 0.00 |
| [illegible] | | Clearing [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | [illegible] | 0.00 | 0.00 | 0.00 |
| [illegible] | | [illegible] Posting Errors | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 |
| [illegible] | | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | [illegible] | 0.00 | [illegible] |
| | | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | | Accounts Payable | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SUBTOTAL [illegible] | | | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Accrued Interest | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | [illegible] | 0.00 | [illegible] |
| | | SUBTOTAL [illegible] | | | [illegible] | [illegible] | 0.00 | [illegible] | 0.00 | [illegible] |
| [illegible] | | Deferred Credits | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Deferred Cr Loan Sale | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] Sales | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Unearned [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | [illegible] | [illegible] | 0.00 |
| [illegible] | | Deferred Loan Fees | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| [illegible] | | Deferred [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | 0.00 | 0.00 |
| | | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | | Unapplied Payments | [illegible] | [illegible] | [illegible] | 0.00 | [illegible] | [illegible] | [illegible] | [illegible] |
| | | SUBTOTAL [illegible] | | | [illegible] | 0.00 | [illegible] | [illegible] | [illegible] | [illegible] |
| 4125 | | Common Stock | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | [illegible] | 0.00 | [illegible] |
| | | SUBTOTAL 4125 | | | [illegible] | 0.00 | 0.00 | [illegible] | 0.00 | [illegible] |
| [illegible] | | Paid-In Capital | [illegible] | [illegible] | [illegible] | 0.00 | 0.00 | [illegible] | 0.00 | [illegible] |
| | | SUBTOTAL [illegible] | | | [illegible] | 0.00 | 0.00 | [illegible] | 0.00 | [illegible] |

[illegible]

[illegible] RECONCILIATION WORKSHEET

BENJAMIN FRANKLIN FEDERAL S & L, PORTLAND, OREGON [illegible]

PAGE [illegible]

| PRIM. ACC. A/C TYPE | [illegible] DESCRIPTION | ENTY NO. | [illegible] A/C NO. | [illegible] BALANCE | DEBITS | CREDITS | [illegible] BALANCE | [illegible] SPLIT | [illegible] SPLIT |
|---|---|---|---|---|---|---|---|---|---|
| [illegible] | Collective CD's | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | FHLB Advances | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | RTC Advances | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Other Borrowed Money | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accrued Interest | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Contract Payable | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable-[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable-Loans | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable-Employee | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Dealer Reserve | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Contract Collections | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable-[illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Accounts Payable-Investor | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Advance Payments | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| | SUBTOTAL [illegible] | | | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Federal Inc Tax Payable | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | [illegible] State Tax Payable | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |
| [illegible] | Taxes Accrued | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] | [illegible] |

PRTSCCS 09/22/90 17:22:07

# DACS ADJUSTMENTS TO STATEMENT OF CONDITION

Institution Name: BENJAMIN FRANKLIN FEDERAL S & L
City & State: PORTLAND, OREGON
Date Closed: 09/07/90
Inst Number: 7166

PAGE 2

| | LIABILITIES & EQUITY CAPITAL | PTSA ENDING BALANCE | DACS ADJUSTMENTS DEBITS | DACS ADJUSTMENTS CREDITS | ADJUSTED BALANCE |
|---|---|---|---|---|---|
| 2200 | SAVINGS DEPOSITS | 2,380,310,207.11 | 0.00 | 0.00 | 2,380,310,207.11 |
| 2300 | TIME DEPOSITS | 7,390,582.40 | 0.00 | 0.00 | 7,390,582.40 |
| | TOTAL DEPOSITS | 2,387,700,789.51 | 0.00 | 0.00 | 2,387,700,789.51 |
| | OTHER LIABILITIES | | | | |
| 2510 | RTC Advances | 503,000,000.00 | 0.00 | 0.00 | 503,000,000.00 |
| 2515 | Other Borrowings | 98,483,061.92 | 0.00 | 0.00 | 98,483,061.92 |
| 2520 | Interest Payable - Deposits | 27,871,133.53 | 0.00 | 0.00 | 27,871,133.53 |
| 2525 | Accounts Payable | 2,293,208.02 | 948,829.83 | 0.00 | 1,344,379.19 |
| 2530 | Investor Payables | 1,562,597.09 | 0.00 | 0.00 | 1,562,597.09 |
| 2533 | Impounds | 38,339,773.67 | 0.00 | 0.00 | 38,339,773.67 |
| 2540 | Taxes Payable | 181,978.41 | 102,096.39 | 0.00 | 79,882.02 |
| 2545 | Suspense/Clearing Accounts | -91,099.79 | 0.00 | 0.00 | -91,099.79 |
| 2550 | Accrued Expenses | 173,520.69 | 173,520.69 | 0.00 | 0.00 |
| 2555 | Interest Payable - Borrowings | 8,412,002.26 | 3,802,330.74 | 0.00 | 4,309,671.52 |
| 2560 | Deferred Income | 131,787,652.41 | 131,783,842.99 | 0.00 | 3,809.72 |
| 2565 | Unapplied Payments | 764,645.49 | 0.00 | 0.00 | 764,645.49 |
| | TOTAL OTHER LIABILITIES | 805,498,475.72 | 136,810,619.54 | 0.00 | 668,687,356.38 |
| | TOTAL LIABILITIES | 3,193,199,265.43 | 136,810,619.54 | 0.00 | 3,056,388,645.89 |
| | EQUITY CAPITAL | | | | |
| 4120 | Common Stock | 7,705,000.00 | 0.00 | 0.00 | 7,705,000.00 |
| 4130 | Surplus | 38,019,397.65 | 0.00 | 0.00 | 38,019,397.65 |
| 4140 | Undivided Profits | -223,843,978.78 | 82,777,552.25 | 152,083,586.92 | -154,537,944.41 |
| | TOTAL EQUITY CAPITAL | -178,119,581.13 | 82,777,552.25 | 152,083,586.92 | -108,813,546.76 |
| | TOTAL LIABILITIES & EQUITY CAPITAL | 3,015,079,684.30 | 219,588,171.79 | 152,083,586.92 | 2,947,575,099.13 |

Total Liabilities [illegible]
LESS RTC Retained [illegible]
Corp. POC including deposits + RTC's for RTC Corp.

PRTSC32 09/21/90 10:07:28

DACS Pro-forma Statement — RTC

Institution Name: BENJAMIN FRANKLIN FEDERAL S & L
City & State: PORTLAND, OREGON

| LIABILITIES & EQUITY CAPITAL | | AMOUNT |
|---|---|---|
| OTHER LIABILITIES | | |
| 2510 | RTC Advances | 503,000,000.00 |
| 2515 | Other Borrowings | 98,482,061.92 |
| 2525 | Accounts Payable | 353,878.39 |
| 2540 | Taxes Payable | 79,862.02 |
| 2545 | Suspense/Clearing Accounts | 53,715.98 |
| 2555 | Interest Payable - Borrowings | 4,809,671.52 |
| 2565 | Unapplied Payments | 26,132.03 |
| | TOTAL OTHER LIABILITIES | 606,806,339.86 |
| | TOTAL LIABILITIES | *RTC receiver retained* 606,806,339.86 |
| EQUITY CAPITAL | | |
| 4120 | Common Stock | 7,705,000.00 |
| 4130 | Surplus | 38,019,397.65 |
| 4140 | Undivided Profits | -154,537,944.41 |
| | TOTAL EQUITY CAPITAL | -108,813,546.76 |
| | TOTAL LIABILITIES & EQUITY CAPITAL | 497,992,793.10 |

Liabilities Assumed, less Assets Purchased by Assuming Inst
TOTAL ~~-85,543,796.53~~ 412,448,996.57

| NOTE: | | |
|---|---|---|
| | Liabilities Assumed | 2,649,582,306.03 |
| Less: | Assets Purchased | 2,735,126,102.56 |
| Less: | Premium Paid | 162,312,000.00 |
| | = Wire/Note to Assuming Inst from RTC | -247,855,796.53 |

CAUTION: If Total Assets of the Assuming/Agent Inst. include pledged securities, the Asset purchase price will require adjustment. If Total Liabilities passed to the Assuming/Agent Inst. include liabilities other than deposit liabilities, the RTC corporate wire or note will require adjustment.