## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| WINSTON & STRAWN LLP, ) | |
| ) | |
| and ) | |
| ) | |
| WILLNER & ASSOCIATES, ) | |
| ) | |
| and ) | Civil Case No. 06-1120 (EGS) |
| ) | |
| BLACKWELL SANDERS PEPER MARTIN ) | [Consolidated with No. 06-1227 |
| and ) | (EGS) and No. 06-1273 (EGS)] |
| ERNEST M. FLEISCHER, ) | |
| ) | |
| Consolidated Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| ) | |
| FEDERAL DEPOSIT INSURANCE ) | |
| CORPORATION, AS RECEIVER FOR ) | |
| THE BENJ. FRANKLIN FS&LA, ) | |
| ) | |
| Defendant. ) | |

## PLAINTIFF WINSTON & STRAWN'S RESPONSE IN OPPOSITION TO FDIC'S STATEMENT OF MATERIAL FACTS IN SUPPORT OF ITS OPPOSITION AND CROSS MOTION FOR SUMMARY JUDGMENT

Pursuant to Local Civil Rule 7(h), Plaintiff Winston & Strawn LLP, by its counsel, hereby submit its response to the Statement of Material Facts in Support of Cross Motion for Summary Judgment.

1.      The IRS prepared 11 tax scenarios for use in the settlement discussions in the Tax Case that resulted in a cumulative tax liability, without interest and penalties, ranging from approximately $11 million to $97 million. Gill Dec. 2 ¶ 3. FDIC Ex. 14.

**RESPONSE:**  Disputed.  During the course of the negotiations, the Department of Justice produced, as a basis for discussion, calculations of the taxes, penalties and interest that would be due from the receivership for the years 1990 through 2002 under 12 different scenarios. Moetell Decl. at ¶ 9 (Ex. 5).[1]  The taxes, penalties and interest due under these scenarios ranged from an amount in excess of $800 million to roughly $33 million (in the scenario that adopted our position that the RTC advances should be treated as loans).  Excluding penalties and interest on penalties, the taxes and interest due under these scenarios ranged from roughly $450 million to roughly $33 million (in the scenario that adopted our position that the RTC advances should be treated as loans). *Id.*

Regardless of the number of scenarios posited by the IRS, it is clear that the IRS came into the negotiations fully expecting to recover the entirety of the $92M receivership surplus, and that it did not intend to agree on any scenario that would have left money in the receivership. *See* Gill Dep. Trans. at 65:7-22 (Ex. 1).  Indeed, that was the FDIC's belief.  6/22/04 FDIC Letter (Ex. 2).

2.      The IRS ultimately agreed to settle the Tax Case on terms nearly matching the results of its Scenario #10, which included a tax liability of approximately $12 million and interest of approximately $38 million, if run to the date of settlement. Gill Dec. 2 ¶ 6. FDIC Ex. 14.

**RESPONSE:** Plaintiff disputes that the "IRS ultimately agreed to settle the Tax Case on terms nearly matching the results of its Scenario #10." The $50 settlement that was eventually agreed to did not correspond to any of the scenarios that had previously been circulated by DOJ. Moetell Decl. at ¶ 16 (Ex. 5). The $50 million figure exceeded the taxes and interest that would have been payable under Schedule 10 by several million dollars. *Id.*

3.    The FDIC-Receiver, without assistance from counsel for the shareholders, convinced the IRS's Tax Division to permit the receivership to reopen the tax returns and receive full credit for the post-insolvency interest payments. If this $258 million deduction had not been allowed, the entire receivership surplus would have been consumed. Gill Dec. 4 ¶ 12. FDIC Ex. 14.

**RESPONSE:** Plaintiff disputes that Winston & Strawn did not play a role in reopening Benj. Franklin's prior tax returns to apply the $258 million deduction. Plaintiff prepared a position paper on the $258 million interest deduction issue, supporting the FDIC's position and providing additional analysis not contained in the FDIC letter. Moetell Decl. at 12 (Ex. 5).

Furthermore, Paragraph 2 fails to take into account the FDIC's role is causing the very problem it allegedly solved. As steward of Benj. Franklin's tax returns during the operative period, it was the FDIC (and the RTC before it) that failed to deduct in a timely manner $258 million in interest payments. *Id.* at 5. Having caused the problem in the first instance, the FDIC cannot take "credit" for its solution.

---

[1] All references to Exhibits are to exhibits attached to the accompanying Plaintiff Winston & Strawn LLP's Reply Memorandum In Support Of Its Motion For Summary Judgment And Opposition To Cross Motion For Summary Judgment.

4.    On September 29, 2005, Don Willner and Rosemary Stewart, an attorney for Spriggs & Hollingsworth met with Richard Gill, an attorney for the FDIC-Receiver, and discussed, among other things, the issue of attorney's fees. Mr. Gill advised Mr. Willner and Ms. Stewart that the FDIC's receivership claims division had been very negative regarding paying fees beyond regular hourly rates. The same day, Ms. Stewart sent an email to Tom Buchanan, counsel for Winston & Strawn, that recounted the meeting and specifically said that "it was clear that [Richard] is trying to prepare us for not getting the full amount of the claims as we filed them." Email to Tom Buchanan from Rosemary Stewart (9/28/2005). FDIC Ex. 4. See Gill Dec. 4-5 ¶ 13. FDIC Ex. 14.

RESPONSE: Plaintiffs do not dispute that Don Willner and Rosemary Stewart met with Richard Gill on September 29, 2005 nor that later that day Rosemary Stewart sent an e-mail to Tom Buchanan with the text as quoted. However, Plaintiff does dispute that the attitude of the FDIC's receivership claims division is in any way relevant to this Court's determination of the case at hand.

To be clear, Winston & Strawn had entered into an agreement with Mr. C. Robert Suess pursuant to which Winston & Strawn provided legal services in connection with the Tax Case at greatly reduced rates (approximately one-third of the firm's ordinary hourly billing rates) in exchange for which Winston & Strawn would be paid a success fee in the event the representation proved successful. Winston & Strawn Statement of Undisputed Material Facts ¶ 15 ("W&S Facts"). The FDIC's after-the-fact denial of the claim (or alleged notice of the same) is not relevant to the underlying parties' expectations of payment or to the appropriateness of said denial.

4

5.    The Notice to Shareholders in United States v. FDIC, No. 02-1427 (D.D.C.) provided that after payment of $50 million to the IRS, the remaining receivership surplus funds of about $42 million would be distribution [sic] pro rata to all Benj. Franklin shareholders who could demonstrate their ownership of Benj. Franklin common stock, after other claims and expenses are paid. Notice to Shareholders 8. FDIC Ex. 5.

**RESPONSE:**  Plaintiff does not dispute the notice sent to shareholders conveyed the information contained in this statement, but note that the notice conveyed additional information including the fact that counsel for the shareholders contributed to the proposed successful result. FDIC Opp'n, Ex. 5.

6.    The Notice to Shareholders also provided for the creation of a reserve for future years' receivership and administrative expenses and other legal contingencies. At the time the FDIC-Receiver estimated that this reserve would be about $1 million. Notice to Shareholders 6. FDIC Ex. 5.

**RESPONSE:** *See* Response to No. 5.

7.    The Notice to Shareholders also provided for the distribution of approximately $3 million to the Benj. Franklin Shareholders Litigation Fund to reimburse. Notice to Shareholders 7. FDIC Ex. 5.

**RESPONSE:** *See* Response to No. 5.

8.    The Notice to Shareholders also stated that the FDIC-Receiver agreed to distribute an amount representing the reasonable fees and expenses of the shareholders' attorneys

and consultants in connection with such persons' work to reduce the $1.2 billion tax liability alleged by the IRS down to the $50 million settlement amount. The FDIC-Receiver estimated that the amount of reasonable fees and expenses would be between $1 million and $2 million. Notice to Shareholders 7-8. FDIC Ex. 5.

**RESPONSE:** *See* Response to No. 5. Plaintiff also notes that FDIC-Receiver's determination of reasonableness is not shared by the Benj. Franklin shareholders as a majority of them have already expressed their support for Winston & Strawn's requested success fee, and not one shareholder has expressed disapproval of Winston & Strawn's application. W&S Facts ¶ 38.

9. The Notice to Shareholders elicited a response from about 446 of Benj. Franklin's estimated 6500 shareholders. The respondents represented about 3,000,000 shares of Benj. Franklin stock, 99.3% of which agreed with the proposed settlement. Order at 2, United States v. FDIC, No. 02-1427 (D.D.C.) (5/2/2006). FDIC Ex. 6.

**RESPONSE:** Not Disputed.

10. Rosemary Stewart testified that she believed that the FDIC-Receiver's payment of about $89,000 to Ernest Fleischer was reasonable compensation for his contribution to the settlement process. Stewart Dep. 26:6-12. FDIC Ex. 13.

**RESPONSE:** Plaintiff does not dispute this Paragraph but notes that it has no probative value in regards to Winston & Strawn's request for a success fee.

11.     C. Robert Suess, a major shareholder and organizer of the Goodwill Litigation, has stated that the FDIC-Receiver was generous to Willner & Associates by paying that firm $250 per hour and urged the FDIC-Receiver not to pay Willner & Associates any more. Undated letter

**RESPONSE:**  Plaintiff does not dispute this Paragraph but notes that it has no probative value in regards to Winston & Strawn's request for a success fee.


12.     During a telephone conversation in October 2006, Robert Suess told FDIC attorney Richard Gill that he knew the FDIC-Receiver was trying to do the right thing by trying to keep control of the legal fees in this case. Gill Dec. 5 ¶ 14, FDIC Ex. 14.

**RESPONSE:**  Plaintiff has no information to support this Paragraph but Mr. Suess does not recall the referenced discussion.  In any event, the factual allegation has no probative value in regards to Winston & Strawn's request for a success fee.  Indeed, Mr. Suess fully supports Winston & Strawn's fee request.  W&S Facts, Ex. 6.


13.     The FDIC-Receiver currently is reviewing an additional claim submitted by Winston & Strawn on behalf of Robert Suess for $217,000 that was not included in earlier submissions. Gill Dec. 5 ¶ 15. FDIC Ex. 14.

**RESPONSE:** Plaintiff disputes that that Mr. Suess' claim is "an additional claim…not included in earlier submissions. " On August 21, 2006, Winston & Strawn on behalf of its client C. Robert Suess, filed a Proof of Claim for reimbursement of legal fees and expenses in the amount of $216,599.50 incurred by Mr. Suess.  See Buchanan Supp. Decl. at ¶ 5 (Ex. 6).  The Proof of Claim represented legal fees and expenses that should have been included in the original

Proof of Claim submitted by Don. S. Willner on behalf of the Shareholder's Litigation Fund but were not. *Id.* At the request of the FDIC, Winston & Strawn, on behalf of its client Mr. Suess, sent a letter to the FDIC on February 7, 2007, to provide additional support and clarification for Mr. Suess' August 21, 2006, Proof of Claim. *Id.*

Dated: March 15, 2007                    Respectfully submitted,

By:  _____
     Thomas M. Buchanan
     Eric W. Bloom
     Charles B. Klein
     Scott D. Pluta
     WINSTON & STRAWN LLP
     1700 K Street, N.W.
     Washington, D.C. 20001
     (202) 282-5100

     *Counsel for Winston & Strawn LLP*

## CERTIFICATE OF SERVICE

I hereby certify that on March 15, 2007, a copy of the foregoing document was served by first class mail, postage prepaid, and email upon the following:

William F. Demarest (D.C. Bar No. 266312)
Blackwell Sanders Peper Martin LLP
750 17th Street N.W., Suite 1000
Washington, D.C. 20006-3901
Phone: (202) 378-2300
Facsimile: (202) 378-2319
*Attorney for Blackwell Sanders Peper Martin, LLP and Ernest Fleischer*

James Borthwick  (MO #19722)
Nancy S. Jochens  (MO #49022)
Blackwell Sanders Peper Martin LLP
4801 Main Street, Suite 1000
Kansas City, MO. 64112
Phone: (816) 983-8000
Facsimile: (816) 983-8080
*Attorneys for Blackwell Sanders Peper Martin, LLP and Ernest Fleischer*

Don S. Willner
DON S. WILLNER AND ASSOCIATES
630 Sunnyside Road
Trout Lake, Washington 98650
(509) 395-2939 (Facsimile)

Bruce C. Taylor
FEDERAL DEPOSIT INSURANCE CORPORATION
55017th Street, NW
Room VS-E7118
Washington, DC 20429
(703) 562-2478 (Facsimile)
Counsel for Federal Deposit Insurance Corporations,
as Receiver far The Benj. Franklin FS&LA

Kelby Fletcher
Attorney at Law
1501 4th Avenue, Suite 2800
Seattle, WA 98101
(206) 682-1415 (Facsimile)

Jeremiah A. Collins
13REDHOFF &. KAISER, PLLC
805 15th Street, NW
Washington, D.C. 20005-2207
(202) 842-1885 (Facsimile)
Counsel for Willner & Associates

_____
Thomas M. Buchanan

DC:506402.2